TERRY B. PATTERSON, Associate Judge.
This is an appeal from a final decree granting a permanent injunction the effect of which is to -allow the appellees, the plaintiffs below, the right to maintain a drainage ditch across appellants’ lands.
Appéllants have, since 1926 owned the east half of the east half of Section 35, Township 37 South, Range 30 East. Their property is bounded on the south and east: by public highways and drainage ditches. In June of 1951 appellants sold to appellees the northwest quarter of the southeast quarter of said Section 35, the forty acres sold to appellees being thus an interior tract with reference to the highways and drainage ditches. The lands involved are low muck lands requiring drainage facilities to accommodate them to agricultural purposes. At the time of the purchase by appellees, a private road and ditch extended northward from the public road and ditch along the south of appellants’ land to the approximate vicinity of the south east corner of appellees’ property. Otherwise the evidence shows and the Chancellor found, that the natural drainage of the area was from west to east so that appel-lees’ tract depended upon drainage eastward across appellants’ lands to the highway ditch bordering appellants’ lands on the east.
Shortly after the sale of the mentioned tract to appellees, appellant Manning constructed a road and ditch running north and south along the joint boundary of the lands of the parties, that is, along the eastern boundary of appellees’ forty acres and constructed a connecting drainage ditch eastward from the southeast corner of ap-pellees’ tract to the public ditch bordering appellants’ lands on the east. The evidence is in conflict on the question whether this drainage system was constructed as part of the consideration for sale. It is nevertheless undisputed that the road and ditch occupied a portion of appellees’ tract and thereafter, for many years the appellees’ tract did in fact drain through this system southward thence eastward across appellants’ property, and the ditches were maintained at the joint expense of the parties.
The controversy giving rise to this litigation arose when, after some five years, the appellant Manning refused to appellee Hall the permission t'o clean out the ditch running eastward across the Manning propérty, resulting in a serious threat of flooding appellees’ lands and destruction of a crop of caladium bulbs.
*426 A temporary injunction was granted preventing Manning from interfering with or preventing Hall’s right to go upon Manning’s land and keep the drainage ditch open to the eastward. The injunction was made permanent in the final decree which found and decreed that Hall had acquired a permanent drainage easement in the controverted drainage ditch.
The Chancellor heard voluminous evidence of the parties, much of it in sharp conflict, particularly with respect to whether the system of drainage was contemplated by the parties and entered into the consideration of the sale, and whether appel-lees’ tract could be conveniently drained to the southward through the pre-existing ditch. The Chancellor nevertheless resolved the conflicts and made findings in his final decree as follows:
“I. That the road, as constructed by the defendants, according to their testimony in this case, along the East boundary of the northwest quarter (NW14) of the southeast quarter (SE14) of Section 35, does impede the natural flow of the water so as to measurably increase the water on the plaintiffs’ land.
“II. At the time of the sale by the defendants to plaintiffs the natural drainage of the water over and across the lands in question was from the west to the east, or southeast;-
“III. That there was a plat recorded on September 29, 1924, in Plat Book 1, Page 42, a plat showing the existence and easements for roads and ditches, and while certain attempts were made to vacate the plat, the defendants did actually utilize said road easements along the western boundary of their property, that they did utilize the easement along the east boundary of the plaintiffs’ property for the purposes of road construction and resulting ditch. That they did further ratify and acknowledge the existence of the recorded plat by constructing the ditches in question, both on the defendants’ land and the plaintiffs’ land, providing. for the drainages outlined therein.
“IV. That there is an easement by implication, that there was clearly unit of title between the dominant and servant estates, and that while some dispute as to the exact location of the drain, the drain was apparent, has been in continuous use, and is of a permanent nature, and that it has clearly been established that in view of the circumstances existing at the time of conveyance, it would be necessary for such an easement for the complete enjoyment of estate granted.
“V. The ditches, drains and canals, as constructed by the defendants and the plaintiffs are mutual drains, established by mutual or implied consent, and by mutual contributions of rights of way and easements, and mutual ánd joint endeavor of maintenance, and each by such participation is estopped from preventing the other’s use of existing drainage ditches.
“That this decree is based upon the testimony establishing the sale of the land by defendants to the plaintiffs, the construction of the north-south road and bridge over' same, permitting the water to drain thereunder to the ditch in question by the defendants according to the recorded plat; the resulting drainage ditch; permitting the defendants to pay part of the ditch cleaning expense; and standing by while substantial improvements were made by the plaintiffs in reliance upon the use of the drainage ditch in question.”
Pursuant to such findings the decree permanently enjoined the appellants from interfering with or blocking the drainage ditch in controversy and gave to appellees the permanent right of ingress or egress for the purpose of cleaning and maintaining the ditch in a reasonable manner.
Appellants strongly contend that the facts of this case are insufficient to create an easement, but only a revocable permissive use.
*427 It is the established law of this State that easements may be created only by express grant, by implication, or by prescription. Winthrop v. Wadsworth, Fla., 42 So.2d 541; Canell v. Arcola Housing Corporation, Fla., 65 So.2d 849. No contention is made here that the appellees have an easement over appellants’ lands either by express grant or by prescription and on account of our view of the law of mutual drains it is unnecessary for us to decide whether the Chancellor’s finding of an easement by implication is sufficiently supported by the record or whether appellees have any easement by reason of the recorded plat cited in the Court’s findings. We think the evidence in this case amply supports the Chancellor’s finding Number V wherein he finds that the drainage ditch in dispute here is an integral part of a mutual drainage system constructed, maintained and acquiesced in by both parties to this dispute under such circumstances that each has a continued right to its continued operation and that such right is enforceable by injunction.
“When a drain established by mutual license, consent, or agreement of adjacent or adjoining landowners is once constructed, none of the parties interested may close or obstruct it without the consent of all; and injunction will lie to prevent it.” 28 C.J.S. Drains § 52 page 394.
“It has been said that the right of drainage through the lands of another is an easement requiring for its enjoyment an interest in the lands, and cannot be conferred except by deed or conveyance in writing, that it cannot be conferred by parol license, and that a license to lay a drain does not vest any title or give any irrevocable easement in the land, even though a consideration is paid for it, at least in the absence of proof that revocation will work irreparable damage to the licensee. It has been held, however, that where adjoining landowners have jointly constructed a drainage ditch over their lands under an oral agreement as to its course, and each has contributed labor and money in its construction, afterward plowing and farming in accord with it, neither can set it aside without the consent of the other.” 56 Am.Jur., Waters, Section 81, page 568.
In a case substantially similar to the facts of this case, the Supreme Court of Iowa in recognizing reciprocal rights in a mutual drainage ditch said:
“The evidence very plainly leads to the conclusion of fact that the ditch described in the second count was constructed jointly by the parties, under an oral agreement as to its course, etc; each party contributed labor or money to constructing it. The parties have recognized the ditch, have plowed and farmed in accord with it, and have expended money and labor in the performance of the contract. It can be set aside, disregarded, and annulled by neither without the consent of the other. The assent of the defendant to the construction of the ditch on his land is in the nature of a license which, having been accepted, and rights conferred, assumed and exercised, cannot be set aside or disregarded.” Vannest v. Fleming, 79 Iowa 638, 44 N.W. 906, 908, 8 L.R.A. 277.
The record supports the conclusion that such observations apply with equal validity to the facts of the case at bar. Even though appellee Hall contributed no actual expense and labor in the initial construction of the system of ditches, nevertheless part of it is constructed on his lands with his concurrence, the drainage serves the lands of both parties, both parties have ac-' quiesced in the construction and maintenance over many years and have constribut-ed mutually to its upkeep. Hall’s tract since the construction of the system has been dependent upon it as a substitute for the theretofore existing natural drainage across appellants’ tract which was interrupted by the construction. It was found *428 by the Chancellor and we think properly so that the drainage ditches involved constituted a mutual drain which neither party might interrupt without the consent of the other. Under the rule alluded to above, the Chancellor was under the equities of this case justified in enforcing appellee Hall’s rights in such drain by the remedy of injunction.
Whether a drainage ditch or system constitutes a mutual drain must depend upon the facts of each case, and whether the remedy of injunction is available to enforce reciprocal rights therein must also depend upon the equities as they may appear in any case. We think the relief afforded by the final decree in this case is justified upon the Court’s finding Number V. It is therefore unnecessary to decide whether there has been established a drainage easement by implication.
Affirmed.
KANNER, C. J., and ALLEN, J., concur.