702 So.2d 586 (1997)
The MEADOWS COUNTRY CLUB, INC., Appellant,
v.
John R. UNNEVER, Violet D. Unnever, Richard T. Batten and Marguerite H. Batten, Appellees.
No. 97-00647.
District Court of Appeal of Florida, Second District.
November 26, 1997.
*587 Thomas M. Hoeler of Shear, Newman, Hahn & Rosenkranz, P.A., Tampa, for Appellant.
Harry W. Haskins, Sarasota, for Appellees.
FRANK, Judge.
This appeal involves the construction of an easement over residential lots in a golf course community. The residents, John and Violet Unnever and Richard and Marguerite Batten, contended that the Meadows Country Club exceeded the scope of the easement by running heavy course maintenance equipment over a golf cart path to the eighth and ninth holes of the Meadows Country Club from early morning throughout the day, disturbing their peaceful and quiet enjoyment of their property. The Meadows Country Club countered that the easement was being used as intended, but the trial court, having decided that the easement was unambiguous, would not allow extrinsic evidence on intent and entered a permanent injunction restricting its use. Because we find as a matter of law that the easement language is ambiguous, we reverse the final judgment and remand for reconsideration.
The Unnevers and Battens, in their amended complaint, sued for injunctive relief for the alleged breach of an easement and for the abatement of a claimed nuisance. The essential complaint is that, after purchasing their lots and homes, the plaintiffs "discovered that every morning, holidays and weekends alike, beginning at approximately 6:00 a.m. and continuing throughout each day, trucks, mowers and golf course maintenance vehicles travel across the golf cart path that runs behind and across Plaintiff's property." Attached to the complaint was the easement in question, the pertinent part of which follows:
WITNESSETH:
That Grantor, for and in consideration of One Dollar and other valuable consideration, by these presents does hereby grant unto Grantee, two perpetual, nonexclusive easements over and across those portions of Parcel "II", The Meadows, Unit 16, as per plat thereof recorded in Plat Book 33, Page 25, Public Records of Sarasota County, Florida, more particularly described as follows:
Easement No. 1:

*588 A parcel of land fifteen feet in width extending along a portion of the southerly boundary and thence northerly through the middle of said Parcel II as more particularly reflected on the plat of said Unit 16 and described therein as "15-foot wide Golf Cart Path and Utility Esmt." (herein the "Irrigation Easement"), such easement to be used solely for the purpose of constructing, installing, operating, repairing, maintaining and replacing an existing underground non-potable water main which extends from the easterly right of way line of Honore Avenue over and across said easement area to Grantee's lands described as Tract CXII, The Meadows, Unit 15, and the lake and drainage system adjacent thereto, together with a limited right of ingress and egress thereto for Grantee's personnel and all necessary maintenance equipment [emphasis supplied].
The Meadows Country Club operates a country club and planned development in Sarasota County known as The Meadows. The property, which includes three golf courses, was acquired in September 1989, from Taylor Woodrow Homes, Ltd., which continued to operate the club until 1990. As part of the transaction, the Country Club acquired easements from Taylor Woodrow through an easement deed and agreement, which contains the easement that forms the subject of this claim.
The Unnevers and Battens own lots 22 and 23 of a subdivision called Devonshire Place. The easement runs from a shed housing maintenance equipment used to service the golf courses, behind the plaintiffs' homes, and then to the Meadows golf course. On the survey the easement is described as a fifteenfoot wide golf cart path easement. The Country Club did not dispute that the easement was being used to transport maintenance equipment from the shed to the golf course, beginning at approximately 6:15 a.m. every morning. Both the Battens and Unnevers testified that they were aware that the Meadows was a golf course community when they purchased their homes. They observed the golf cart path behind their homes on their property when they bought their lots and houses but they were unaware of the extent of use of the path until they actually moved into their homes. Mrs. Unnever testified that their real estate broker told them that the path was used infrequently, maybe four to eight times a year, for "shotgun" starts.
The theory of the Unnevers and Battens was that the plain language of the easement restricted its use for the construction and repair of a water main for irrigation. The conjunctive language, which we have highlighted above"together with a limited right of ingress and egress thereto for Grantee's personnel and all necessary maintenance equipment"in the plaintiffs' view referred specifically to equipment used to maintain the water main. The Country Club's theory was that the second clause described an additional right to use the easement for "all necessary maintenance equipment" and was not limited simply to irrigation-related functions. In support of its argument, the Country Club attempted to present evidence that the easement was used to maintain this part of the golf course in the same manner before the Unnevers' and Battens' homes were built, in fact from the time Taylor Woodrow opened the golf course in the early 1980's. The trial judge sustained the plaintiffs' objections to this testimony on the ground of irrelevancy, citing the clear and unambiguous contractual language that could not be contradicted by extrinsic evidence.
The view of this court is that the easement language presents an ambiguity; each opposing theory has a degree of merit and the easement admits of two interpretations. Because construction of easement language, like that of other contracts, is a matter of law, this court need not defer to the decision of the trial judge. See Hillsborough County v. Kortum, 585 So.2d 1029 (Fla. 2d DCA 1991). When construing an easement, a court must attempt to fulfill the parties' intentions. Thus, the court may consider the circumstances surrounding the creation of the easement and the conduct of the parties. See Kotick v. Durrant, 143 Fla. 386, 196 So. 802 (1940). When the intended extent of the easement is not ascertainable from the written language alone, the court may consider extrinsic evidence. See Barasch v. Odio, 561 *589 So.2d 1256 (Fla. 2d DCA 1990); Owen v. Yount, 198 So.2d 360 (Fla. 2d DCA 1967).
The words "together with" and "all necessary maintenance equipment" lead us to the conclusion that the trial court construed this easement too narrowly and erred in failing to admit other evidence of its intended use. Supporting our view is the fifteen-foot width of the cart path, which was readily observable to the plaintiffs prior to their purchases. None of the plaintiffs inquired of the Country Club or of the neighbors concerning the use of the path.
We note also, however, that the easement describes a "limited right of ingress and egress." Upon remand, when all of the evidence is fully presented, the court may well conclude that the Country Club has exceeded the scope of the easement by running noisy maintenance equipment constantly up and down the path throughout the day. Until all evidence concerning the intended use and the actual use of the easement since inception is considered, however, that determination cannot be made.
The final judgment enjoining the Country Club from using the easement for golf course maintenance is reversed. This case is remanded for further proceedings.
DANAHY, A.C.J., and THREADGILL, J., concur.