899 So.2d 461 (2005)
AMERICAN QUICK SIGN, INC. and Bob Pegram, Appellants,
v.
Rick REINHARDT, et al., Appellees.
No. 5D04-2099.
District Court of Appeal of Florida, Fifth District.
April 8, 2005.
*463 Eric Mashburn, Winter Garden, for Appellants.
No Appearance for Appellees.
SAWAYA, C.J.
This appeal presents to us for review a final judgment entered in a declaratory judgment action which declares that a certain tract of land is impressed with an easement. We must determine whether the easement created allows for signage to be maintained within the confines of the legal description denoting the easement area.
We trace common ownership of both dominant and servient parcels to Philip and Alice Rehn, who acquired title to each Orange County parcel in 1975.[1] At the time of acquisition, the dominant parcel was landlocked and leased by Amoco Oil Company. Access was granted to Amoco via a lease agreement with the Rehns. In order to locate the easement on the south end of the servient parcel, the Rehns and Amoco entered into an "Easement Agreement," which provided that the Rehns were granting "a non-exclusive easement for ingress and egress of vehicular and pedestrian traffic to U.S. Highway No. 441 over, upon and across" the described property. This agreement, recorded in the public records where the property was situated, also provided that the easement for ingress and egress would become permanent upon exercise of an option to purchase agreement contained within the lease agreement.
Amoco subsequently assigned its rights under the lease to Hibbard, who then exercised the option to purchase the dominant parcel from the Rehns. The deed from the Rehns to Hibbard contained the following language: "Plus the following non-exclusive easement" and the legal description of the access area.[2] This legal description is the same description of the access area defined in the Easement *464 Agreement between the Rehns and Amoco. The Rehns retained title to the servient parcel. Hibbard conveyed the dominant parcel to Jack and Kathryn Reinhardt. The Reinhardts subsequently conveyed the dominant parcel to RMJ Partnership, which later conveyed the property to Alexander D. Mackinnon, III. Each deed contained the same language regarding the easement that was provided in the deed from the Rehns to Hibbard.
The incident giving rise to this lawsuit occurred during the Reinhardts' ownership of the dominant parcel. The Reinhardts erected a commercial sign in the easement access area without the permission of the Rehns. Although the Rehns immediately objected to the sign, they did not take legal action to have it removed because they were attempting to sell the servient parcel and wanted to wait and see if the new owner wanted to share the signage with the Reinhardts. The Rehns subsequently sold the servient parcel to American Quick Sign, Inc., and that deed provided that the servient parcel was "Subject to the Following Non-Exclusive Easement" followed by a legal description of the easement which is the same description contained in the other deeds and the Easement Agreement.
Quick Sign and the Reinhardts agreed to share the sign for several years until Quick Sign learned that the Reinhardts intended to sell the dominant parcel. Quick Sign removed the Reinhardts' business logo from the sign and the Reinhardts, as general partners of RMJ Partnership, which ultimately purchased the dominant parcel, and Dr. Jack Reinhardt, Inc., their tenant, filed suit against Quick Sign seeking a declaratory judgment that their easement on Quick Sign's property allowed them to erect and maintain the sign in the easement area.
The case proceeded to trial and, after hearing all of the evidence and testimony, the trial court ruled that two easements had been created. The first easement was created when the Easement Agreement was executed and the second was created when the Rehns conveyed the dominant parcel to Hibbard via the deed that provided "[p]lus the following non-exclusive easement" and included the legal description of the easement. The trial court further held that the later easement included the right to erect and maintain the sign in the easement area. The trial court granted Mackinnon's motion to intervene and entered a final judgment, binding also on Mackinnon, which provided that the owners of the dominant parcel would be responsible for maintaining the easement. Quick Sign appeals and argues that the language in the deed merely references the easement created by the Easement Agreement and does not create a second easement. In the alternative, Quick Sign asserts that the provisions in the deed are incomplete because the purpose of the purported second easement is not stated and, therefore, the purported second easement is invalid.
In order to decide whether Quick Sign is correct, we must understand what an easement is and how it may be created. Although an easement is not an estate in land and its creation does not convey title, it is an interest that gives to one other than the owner a right to use the land for some specific purpose. Sears, Roebuck & Co. v. Franchise Fin. Corp. of Am., 711 So.2d 1189 (Fla. 2d DCA 1998); Easton v. Appler, 548 So.2d 691 (Fla. 3d DCA 1989); Dean v. MOD Props., Ltd., 528 So.2d 432 (Fla. 5th DCA), review denied, 534 So.2d 400 (Fla.1988); Kempfer v. St. Johns River Water Mgmt. Dist., 475 So.2d 920 (Fla. 5th DCA 1985), review denied, 488 So.2d 68 (Fla.1986); Hayes v. Reynolds, 132 So.2d 781 (Fla. 1st DCA 1961). As an interest in *465 land, an easement may be created by express grant contained in a deed or other written document. Canell v. Arcola Hous. Corp., 65 So.2d 849 (Fla.1953); Winthrop v. Wadsworth, 42 So.2d 541 (Fla.1949); Crigger v. Florida Power Corp., 436 So.2d 937, 941 (Fla. 5th DCA 1983) ("Easements may be created by express grant; by implication; or by prescription."); Jonita, Inc. v. Lewis, 368 So.2d 114 (Fla. 1st DCA 1979); Dinkins v. Julian, 122 So.2d 620 (Fla. 2d DCA 1960); Manning v. Hall, 110 So.2d 424 (Fla. 2d DCA 1959).
There are no magical words that one must divine in order to create an express easement. All that is necessary are words showing the intention of the parties to create an easement on a sufficiently identifiable estate. Citgo Petroleum Corp. v. Florida E. Coast Ry. Co., 706 So.2d 383 (Fla. 4th DCA 1998) (citing Hynes v. City of Lakeland, 451 So.2d 505, 511 (Fla. 2d DCA 1984)). Documents that convey easements should be construed in the same manner as contracts, and so we turn to the inveterate rules of contract construction for guidance. One Harbor Fin. Ltd. Co. v. Hynes Props., LLC, 884 So.2d 1039 (Fla. 5th DCA 2004). Of these, we begin with the general principle that in reviewing the documents creating an easement, if the language is clear, concise, and unambiguous, we must give effect to the terms as stated without resort to other rules of construction to ascertain their meaning. Claughton Hotels, Inc. v. City of Miami, 140 So.2d 608 (Fla. 3d DCA 1962); see also Laboratory Corp. of Am. v. McKown, 829 So.2d 311, 313 (Fla. 5th DCA 2002). This rule is premised on the notion that it is not the function of the court to make, remake, or alter a document or an agreement for the parties; they must do it themselves. Claughton Hotels, Inc. If the provisions are ambiguous, extrinsic evidence may be examined to determine the intent of the parties at the time the document establishing the easement was created. See Kotick v. Durrant, 143 Fla. 386, 196 So. 802 (1940); Laboratory Corp. of Am.; Meadows Country Club, Inc. v. Unnever, 702 So.2d 586, 588 (Fla. 2d DCA 1997). Ambiguity may be found when the provisions in the document admit to more than one interpretation. See Friedman v. Virginia Metal Prods. Corp., 56 So.2d 515, 517 (Fla.1952); Barnett v. Destiny Owners Ass'n, Inc., 856 So.2d 1090, 1092 (Fla. 1st DCA 2003) ("Language in a document is ambiguous when it is uncertain in meaning and may be fairly understood in more ways than one and is susceptible of interpretation in opposite ways."); Meadows Country Club, Inc., 702 So.2d at 588 ("The view of this court is that the easement language presents an ambiguity; each opposing theory has a degree of merit and the easement admits of two interpretations.").
With these principles in mind and directed, as we should be, by the precedent previously discussed, we have examined the provision "plus the following non-exclusive easement" contained in the deed from the Rehns to Hibbard and we are unable to discern whether it is intended to create a new easement or whether it references the pre-existing easement established in the Easement Agreement between the Rehns and Amoco.[3] Each *466 seems to us a reasonable and plausible interpretation of the deed provisions. For this reason alone, the provisions are ambiguous and extrinsic evidence is necessary to determine their meaning.
Another deficiency readily apparent from examination of the deed is the lack of any provision regarding the purpose for which the purported second easement is created. The Reinhardts would have us apply the general principle that the holder of an easement may do whatever is reasonably necessary for the full enjoyment of the easement. See Florida Power Corp. v. Silver Lake Homeowners Ass'n, 727 So.2d 1149, 1150 (Fla. 5th DCA 1999) ("[T]he law governing easements generally provides that an easement holder has the right to do what is reasonably necessary for the full enjoyment of the easement, but that the right must not be increased to any greater extent than reasonably necessary and contemplated at the time the easement was created."). Hence, the Reinhardts argue that because the easement is silent as to the purpose for which it was created, it may be used for any lawful and reasonable purpose, which includes erection and maintenance of the sign. Quick Sign's reply to this particular argument is that silence on this point renders the purported second easement invalid.
We do not believe that the failure to state the purpose of the easement in the creating document renders the easement fatally flawed; rather, in this instance, it is ambiguous. See Gelfand v. Mortgage Investors of Washington, 453 So.2d 897, 898-99 (Fla. 4th DCA 1984) ("In determining the scope of the easement, the court may, if it concludes the words of the instrument ... ambiguous, resort to extraneous matters to arrive at the probable intent of the parties. Thus, the purpose of the easement, the location of the realty, the situation of the parties, and all surrounding circumstances may be considered."); Walters v. McCall, 450 So.2d 1139, 1142 (Fla. 1st DCA 1984) ("In cases such as the one before us, however, where the wording is ambiguous such that the scope of the easement cannot be determined from the plain meaning of the language employed, the legal extent of the right must be ascertained from the intention of the parties, in light of the surrounding circumstances, at the time the easement right was created.") (emphasis in original); see also Hillsborough County v. Kortum, 585 So.2d 1029, 1031 (Fla. 2d DCA 1991), review denied, 598 So.2d 76 (Fla.1992) ("To determine the scope of the easement, the court must attempt to ascertain the intent of the parties in light of the surrounding circumstances at the time the easement was created."); Hynes v. City of Lakeland, 451 So.2d 505, 511 (Fla. 2d DCA 1984) *467 ("The trial court can look to the intention of the parties to determine the location and extent of any purported easements."). Decisions rendered by courts in other jurisdictions adopt this view.[4] Accordingly, we reject the argument advanced by Quick Sign that silence on this point necessarily renders the purported second easement invalid as opposed to ambiguous. In summary, the language in the deed is ambiguous for two reasons: first, it is unclear and admits to more than one interpretation; and second, there is no stated purpose for the easement in the deed.
Having determined that the provisions in the deed are ambiguous, which we may certainly do as a matter of law by reviewing the deed de novo,[5] we must apply other well-established rules of construction to aid us in the remainder of our analysis so we can come to a conclusion. When construing ambiguous provisions of a document that purport to create or convey an easement, a court must attempt to fulfill the intentions of the parties who created it. Diefenderfer v. Forest Park Springs, 599 So.2d 1309, 1312 (Fla. 5th DCA), review denied, 613 So.2d 4 (Fla. 1992). As we have previously indicated, it is appropriate to consider extrinsic evidence to ascertain the intent of the parties, and consideration should be given to the circumstances surrounding the creation of the easement and the conduct of the parties at the time the document was executed. See Kotick; Behm v. Saeli, 560 So.2d 431, 432 (Fla. 5th DCA 1990) ("In order to make that determination a court must look to the surrounding agreements and circumstances and determine the intentions of the parties at the time the language was used."); Lemon v. Aspen Emerald Lakes Assocs., Ltd., 446 So.2d 177, 180 (Fla. 5th DCA 1984) ("It is a well-established legal principle that if a written contract is ambiguous so that the intent of the parties cannot be understood from an inspection of the instrument, extrinsic or parol evidence of the subject matter of the contract, of the relation of the parties, and of the circumstances surrounding them when they entered into the contract may be received in order to properly interpret the instrument."); Corrigans v. Sebastian River Drainage Dist., 223 So.2d 57, 58 (Fla. 4th DCA 1969) ("The trial court based its *468 interpretation of the easement on evidence relating to the character of the dominant and servient land, its use, and the situation of the parties to the easement, at the time the easement was created. Such is an authorized means of interpreting easements which are ambiguous or expressed in general terms.").
Now our analysis turns to the evidence admitted during the trial. Unlike the de novo standard of review applicable to determining whether the provisions in the deed are ambiguous, when reviewing evidence, we apply a different standard which requires that we determine whether competent, substantial evidence supports the trial court's ruling. See Dinallo v. Gunster, Yoakley, Valdes-Fauli & Stewart, P.A., 768 So.2d 468 (Fla. 4th DCA 2000); Medical Ctr. Health Plan v. Brick, 572 So.2d 548 (Fla. 1st DCA 1990); Gelfand; see also Caulkins Indiantown Citrus Co. v. Nevins Fruit Co., Inc., 831 So.2d 727 (Fla. 4th DCA 2002).
The evidence present in the record regarding the intent of the parties at the time the deed was created comes from the Rehns  the former owners of both the dominant and servient parcels and parties to both the Easement Agreement and the deed. Mr. Rehn testified that he and his wife acquired both parcels in the 1970s and that they leased the dominant parcel to Amoco via the lease agreement and the Easement Agreement. After Amoco assigned the lease agreement to Hibbard, the latter exercised the option to purchase contained in the lease agreement, which provided that upon the occurrence of that event, the easement created by the Easement Agreement would become permanent. Mr. Rehn further testified that when they executed the deed and conveyed the property to Hibbard, the intention of all parties was that the provision in the deed regarding the easement referenced the same easement that was created in the Easement Agreement and that it was an easement solely for ingress and egress. He specifically testified that neither he and his wife nor Hibbard intended, by the language in the deed, to create another easement or to allow the erection of a sign.
This evidence supports but one conclusion  that the easement conveyed in the deed to Hibbard was the same easement created by the Easement Agreement that became permanent upon Hibbard's exercise of the option agreement contained in the lease agreement. Hence, the provision, "Plus the following non-exclusive easement," was not meant to create a totally new and separate easement. Similarly, the inclusion of language in the deed from Rehn to Quick Sign indicating that the servient parcel was "subject to" a nonexclusive easement was also meant to refer to the easement created by the Easement Agreement and not intended to create any new or additional rights.
We have found no competent, substantial evidence to support the trial court's interpretation that the reference in the Hibbard deed was meant to create a second unrestricted easement in addition to the easement for ingress and egress created by the Easement Agreement. The improper interpretation placed on the provisions of this deed has the effect of impermissibly increasing the burden on the servient parcel beyond that contemplated when the easement was created via the Easement Agreement. See Crutchfield v. F.A. Sebring Realty Co., 69 So.2d 328 (Fla.1954); Tice v. Herring, 717 So.2d 181, 182 (Fla. 1st DCA 1998) ("[T]he burden of the easement on the appellants' property may not ordinarily extend beyond that which was reasonably contemplated with the creation of the easement.") (citations omitted); Perlini v. Seminole Woods Cmty. Assn., Inc., 582 *469 So.2d 1221, 1224 (Fla. 5th DCA), review denied, 592 So.2d 682 (Fla.1991) ("An easement may not be increased beyond that reasonably contemplated at the time of its creation."); Avery Dev. Corp. v. Village by the Sea Condo. Apartments, Inc., 567 So.2d 447, 448-49 (Fla. 4th DCA 1990) ("[The] owner of the access easement cannot increase the burden on ... [a servient tenement] to any greater extent than reasonably necessary and contemplated at the time the access easement was granted.") (citation omitted); Easton; Groff v. Moses, 344 So.2d 951 (Fla. 2d DCA 1977).
We conclude that the trial court's determination regarding the creation of a second easement is clearly erroneous and must be reversed. Only one easement has been created and that is the one emanating from the Easement Agreement, which is limited to ingress and egress. Since Quick Sign may not be enjoined from interfering with a right (signage use) that does not exist, the trial court also erred in entering the injunctive relief requested by the Reinhardts. Having thus concluded our resolution of the issues addressed in this opinion, the doctrine of mootness allows closure without the necessity of addressing arguably antecedent issues raised by Quick Sign regarding the trial court's denial of its pretrial motions for summary judgment and judgment on the pleadings.
REVERSED.
PETERSON and MONACO, JJ., concur.
NOTES
[1] "The land benefiting from an easement is called the dominant estate; the land burdened by an easement is called the servient estate." Black's Law Dictionary 527 (7th ed. 1999) (emphasis in original); see also Jones v. City of Tallahassee, 304 So.2d 528, 532 (Fla. 1st DCA 1974).
[2] A nonexclusive easement entitles the owners of the servient parcel to use their land in any manner provided that the use does not interfere with the rights of those to whom the easement was granted. Perlini v. Seminole Woods Cmty. Assn., Inc., 582 So.2d 1221, 1224 (Fla. 5th DCA 1991); Stephens v. Dobbins, 511 So.2d 652 (Fla. 2d DCA 1987). If an easement is silent on this point, the law generally requires that it be construed as a nonexclusive easement. Stephens.
[3] Quick Sign adverts to decisions which hold that a conveyance "subject to" an easement is not sufficient to create an easement. Quick Sign argues by analogy that the particular terminology used in the deed is similarly inadequate. However, these decisions further hold that an easement is not necessarily created in the absence of other circumstances. See Behm v. Saeli, 560 So.2d 431, 432 (Fla. 5th DCA 1990) ("[T]he words `subject to a right-of-way across the East 30 feet' are insufficient in and of themselves to determine whether or not an easement was created. In order to make that determination a court must look to the surrounding agreements and circumstances and determine the intentions of the parties at the time the language was used."); Robertia v. Pine Tree Water Control Dist., 516 So.2d 1012, 1013 (Fla. 4th DCA 1987) (holding that the words "subject to" in a deed were insufficient to reserve easement absent evidence of intention to create easement). Courts in other jurisdictions adopt this view. See Wild River Adventures, Inc. v. Board of Trs. of Sch. Dist. No. 8 of Flathead County, 248 Mont. 397, 812 P.2d 344, 346-47 (1991) (noting that normally "subject to" wording does not indicate creation of property rights); Price v. Walker, 95 N.C.App. 712, 383 S.E.2d 686, 689 (1989) (stating "subject to" wording does not create easement). Therefore, these cases allow extrinsic evidence to enable the court to determine the intent of the parties. Hence, we reject the notion espoused by Quick Sign that these cases adopt a hard and fast rule applicable to the instant case that no easement was created as a matter of law and that resort to extrinsic evidence is inappropriate.
[4] See Rancourt v. Town of Glenburn, 635 A.2d 964, 965 (Me.1993) ("When the purposes of an express easement are not specifically stated, a court must `ascertain the objectively manifested intention of the parties in light of circumstances in existence recently prior to the execution of the conveyance.'") (quoting Englishmans Bay Co. v. Jackson, 340 A.2d 198, 200 (Me.1975)); Hoelscher v. Simmerock, 921 S.W.2d 676, 679 (Mo.Ct.App.1996) ("Just as an easement may be created by grant without a description of its precise location, the grant of an easement need not declare a specific purpose."). We also note that the Restatement (Third) of Property (Servitudes), § 4.1 (2000) adopts this view and states:

i. Interpretation to carry out purpose of servitude. The purpose of the servitude can be derived from the language of the instrument used to create the servitude, the relationship between the parcels of land burdened and benefited, the use made of the servitude, the use made of the benefited and burdened parcels before and after creation of the servitude, and from other circumstances surrounding creation of the servitude. Generally the inferences that ordinary, reasonable purchasers of property benefited or burdened by the servitude would draw from the language, used in the context of the particular transaction or the character of the neighborhood, determine the purpose to be attributed to the creating parties.
[5] Laboratory Corp. of Am. v. McKown, 829 So.2d 311, 313 (Fla. 5th DCA 2002) ("Whether an ambiguity in a written agreement exists is a question of law which appellate courts review pursuant to the de novo standard of review.") (citations omitted); Meadows Country Club, Inc. v. Unnever, 702 So.2d 586 (Fla. 2d DCA 1997).