[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 2, 2010
JOHN LEY
CLERK

_____

No. 07-14328

_____

D. C. Docket No. 06-14042-CV-KMM

LOWE'S HOME CENTERS, INC.,
a North Carolina corporation,

Plaintiff-Appellant,
Cross-Appellee,

versus

RUSSELL J. FRYMAN,
a Texas individual, in his capacity as Trustee
of the Virginia Fryman Trust, and in his capacity
as personal representative for the Estate of
Virginia B. Fryman, deceased,

Defendant-Appellee,
Cross-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(August 2, 2010)

Before BLACK, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

In order to build a new home improvement center, Lowe's Home Centers, Inc. ("Lowe's") obtained the right to purchase a tract of land owned by the Virginia B. Fryman Trust ("Trust") in Highlands County, Florida ("County"). The deal involved the development of the surrounding lands, including the construction of two retention ponds—one to collect stormwater runoff primarily from the parcel of land on which the home improvement center would be built and the other for use by the County to collect runoff from adjacent properties. Construction of the County's retention pond was abruptly halted when the Trust asserted that it never granted access and drainage easements for the benefit of the County's retention pond. Also, when the Trust refused to sign a proposed final development plan, the so-called "Final Plat," the opening of the Lowe's location was delayed.

Lowe's brought suit seeking damages, declaratory relief, and specific performance under the series of contracts executed in the deal. In ruling on the Trust's motion for summary judgment, the district court held that while the Trust had intended to convey some easements for the County's retention pond, it was not obligated to convey the easements on the terms sought by Lowe's. It also held that the Trust had a contractual obligation to execute a final plat containing some wetlands designation. After review and oral argument, we affirm.

I.

In February 2005, Lowe's assumed the right to purchase 17.37 acres of the Trust's land. In April of that year, the parties executed a "Second Amendment" to the purchase agreement. That amendment required the deeding of two areas of land for the construction of retention ponds, one to Lowe's and the other to the County. The Second Amendment explicitly contemplated that the parties would later provide for an easement to benefit Lowe's retention pond as well as other easements in the development plan, but did not include similar language with respect to easements for the benefit of the County's retention pond. It also required the parties to cooperate in developing a plat reflecting a legal subdivision of the land in substantial conformity to a site plan attached to the agreement.

On May 13, 2005, the parties executed both an "Easement and Restriction Agreement" and a "Cooperation Agreement." The Easement and Restriction Agreement explicitly granted and described by metes and bounds the easements for Lowe's retention pond and various other easements involved in the development plan. It did not, however, include similar language or descriptions with respect to easements for the County's retention pond. The Cooperation Agreement also executed by the parties purported to require them to cooperate in recording a plat that was "in conformity with the laws of the State of Florida and the County" and

3

in substantial conformity to an attached site plan. The parties agreed "to accept changes lawfully required by the County as a condition to recording the plat."

Also at this time, Lowe's counsel submitted a "Pond Easement Agreement" for the Trust's signature, to effect conveyance of easements to the County for the benefit of its retention pond. However, the Trust refused to sign it on the ground that it had not received any consideration for the easements.[1] Despite the unexecuted Pond Easement Agreement, the Trust later deeded the land for the County's retention pond and construction on the pond commenced. However, when digging began on the Trust's lands for the associated access and drainage easements, the Trust ordered it halted. Then on December 1, 2005, the Trust refused to execute Lowe's proposed Final Plat, arguing that the Final Plat improperly designated 20 acres of the Trust's land as wetlands and depicted easements that were not provided for in the executed contracts.

On appeal, the parties dispute whether the executed contracts expressly conveyed easements for the County's pond notwithstanding the unexecuted Pond Easement Agreement and whether the Trust was required to sign the proposed Final Plat.

II.

---

[1]As the district court noted, the record does not indicate that either Lowe's or the County contacted the Trust about finalizing the Pond Easement Agreement.

"We review the trial court's grant or denial of a motion for summary judgment *de novo*, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party." HR Acquisition I Corp. v. Twin City Fire Ins. Co., 547 F.3d 1309, 1313–14 (11th Cir. 2008). A party is entitled to summary judgment if there is no genuine issue of material fact and should be granted judgment as a matter of law. Id. at 1314. Because this is a diversity action, we apply Florida law to all substantive legal issues. Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co., 362 F.3d 1317, 1318 (11th Cir. 2004).

Under Florida law, an easement may be created by express grant, by implication, or by prescription. Jonita, Inc. v. Lewis, 368 So. 2d 114, 116 (Fla. 1st DCA 1979). No magical words are needed to create an express easement. Am. Quick Sign, Inc. v. Reinhardt, 899 So. 2d 461, 465 (Fla. 5th DCA 2005). Instead, all that is needed are words showing that the parties intended their language to create an easement. Id. To discern the parties' intent, courts must look to the surrounding agreements and circumstances. Behm v. Saeli, 560 So. 2d 431, 432 (Fla. 5th DCA 1990).

In looking at the surrounding agreements, courts employ the rules of contract construction. See One Harbor Fin. Ltd. Co. v. Hynes Props., LLC, 884 So. 2d 1039, 1045 (Fla. 5th DCA 2004). "[I]f the [contractual] language is clear,

5

concise, and unambiguous, we must give effect to the terms as stated without resort to other rules of construction to ascertain their meaning." Reinhardt, 899 So. 2d at 465. If the language is ambiguous, however, "extrinsic evidence may be examined to determine the intent of the parties" at the time the documents purported to establish the easement were created. Id.

Lowe's argues that both the Second Amendment and the Easement and Restriction Agreement expressly grant easements over the Trust's retained lands for the benefit of the County's retention pond. Specifically, Lowe's points to the Second Amendment, which requires Lowe's to cause the County to construct its retention "pond and related collection and other systems . . . in accordance with approved plans, and generally as depicted on Exhibit A," and which Lowe's believes shows the easements for the benefit of the County's pond.[2] However, we do not read this language to clearly reflect the intention of the parties to convey easements for the County's pond. Rather than impose an obligation on the Trust to grant the easements, it imposes an obligation on Lowe's to ensure that the County performs certain construction. We note that the language stands in sharp contrast to the explicit language in the Second Amendment regarding the conveyance of other easements, including the easements for Lowe's retention pond.

---

[2]The poor quality of Exhibit A makes it hard to determine whether the easements are actually present, but the Trust does not dispute that they are depicted.

6

In connection with the Easement and Restriction Agreement, Lowe's points to the attached Site Plan as an exhibit and a "Final Plat," dated May 6, 2005, which Lowe's contends the agreement incorporated by reference. Lowe's argues that the Site Plan conveys the easements for the County's pond because it depicts those easements and the notes to the Site Plan state that "Retention Area Two is to be made available by [the Trust] to Highlands County, Florida as the site of a regional retention pond, and [the Trust] has agreed to this." However, the notes also state that the "Site Plan details . . . are for illustrative purposes only, and do not constitute binding commitments unless such commitments are otherwise set forth in the Agreement." The Site Plan thus provided only a rough depiction of the easements that were specifically conveyed in the agreement. The agreement makes explicit binding commitments for several easements in the development plan, including the easements for the benefit of Lowe's retention pond, and specifically describes those easements using metes and bounds. But the agreement simply fails to give such treatment to the easements for the County's retention pond.

Lowe's also relies on the Easement and Restriction Agreement's language that "Lowe's shall . . . construct all improvements for the Reciprocal Access Easement and the Common Stormwater Facilities as . . . further identified on PLAN EXHIBIT attached hereto and made a part hereof, which plans and

7

specifications have been approved by the parties." Because the "PLAN EXHIBIT" lists a Final Plat, dated May 6, 2005, that depicts the easements for the County's retention pond, Lowe's argues that those easements were thus approved by the Trust. Like the district court, we reject this interpretation of the contract. As with the Site Plan, the Final Plat was merely referenced to provide guidance in the construction process regarding commitments made in the agreement. Specifically, the Final Plat was referenced with respect to the Reciprocal Access Easement and the Common Stormwater Facilities, both defined terms. Neither term, however, relates to the County's retention pond. For these reasons, we cannot say that the language Lowe's points to in the Easement and Restriction Agreement clearly shows that the parties intended that language to convey easements for the County's pond.

Our conclusion is also supported by the unsigned Pond Easement Agreement. This agreement was prepared for the signatures of the Trust and the County and, unlike the Second Amendment or the Easement and Restriction Agreement, was specifically drafted to convey the easements for the County's retention pond. The parties thus clearly intended the easements to be conveyed by the unexecuted Pond Easement Agreement, not by way of language in the Second Amendment or the Easement and Restriction Agreement.

8

In its complaint, Lowe's sought specific performance requiring the Trust to execute the proposed Final Plat submitted for the Trust's approval on December 1, 2005. The Trust had declined to execute the plat because it designated approximately 20 acres of its lands in a particular tract as wetlands and depicted the easements for the County's pond, which the Trust said were never conveyed in the executed contracts.

When the Trust moved for summary judgment, it asserted one contractual basis for refusing the proposed Final Plat. Specifically, under Section 22(h) of the Second Amendment the Trust was not "required to execute a plat that designate[d] lands then owned by [it] as 'wetlands.'" The district court rejected the Trust's argument but ultimately held that it had made no finding regarding the amount of wetlands on the Trust's property and agreed that its ruling had only obligated the Trust to execute a final plat with the wetlands designation yet to be determined by the County.

On appeal, the Trust does not challenge the district court's ruling on Section 22(h) of the Second Amendment. The Trust only challenges the district court's ruling to the extent that it can be interpreted as obligating the Trust to execute the proposed Final Plat submitted for its approval on December 1, 2005. We hold that

9

the Trust was not required to execute the proposed Final Plat. The Trust is obligated, however, to execute a final plat in accordance with its contractual obligations and the district court's order.

For the reasons stated above, we AFFIRM the district court's order.