COHEN, J.
Robert Frost questioned the wisdom of the age-old adage, “Good fences make good neighbors.”[1] Appellants, John Gill-iand and Wendy McAllister, continue that debate, appealing an order which granted their neighbor declaratory and injunctive relief relating to a fence and gate. We affirm.
The legal issue involves the language of an easement over property located in rural Marion County. In 2003, Appellants purchased the first of two five-acre parcels from Carl and Carmelita Davidson.[2] Appellants’ parcel, the dominant estate, was landlocked and required an easement over property retained by the Davidsons, the servient estate, for ingress to and egress from State Road 19. A fifty-foot-wide easement for “free and unencumbered access,” was conveyed with the purchase of the first five-acre parcel in 2003.
In 2007, Appellee, Heather Heiderich, purchased the servient estate from the *1188 Davidsons, subject to Appellants’ easement. At the time of the purchase, a PVC fence stood on either side of the dirt driveway easement, but there was no gate. The driveway passes through a narrow portion of Appellee’s property that abuts S.R. 19 and continues along one side of her property to a gate between the two properties.
Not long after the purchase, Appellee discussed with Appellants her plan to erect an electronically controlled gate across the shared common driveway to insure that horses kept on the property would not wander onto S.R. 19.[3] The gate would be activated by a remote control, keypad or manual override. When Appellants objected to the installation of a gate, Appellee filed suit seeking declaratory and injunc-tive relief. Appellants answered, demanding the easement remain ungated, and asserting their right to the unobstructed use of the driveway.
While the litigation was pending, Appel-lee erected a gate. In response, Appellants removed the existing gate from the opposite end of the easement and installed it as a second gate along the front of the easement and adjacent to the electronic gate. On a few occasions Appellants chained their gate open, and on one occasion Appellee chained the gate shut. The Lake County Sheriffs Office was called to the property several times to attempt to settle the neighbors’ squabbles.
At trial, Appellee testified that she erected a gate with a keypad next to the driver’s side of the driveway. A plate beneath the keypad displayed the entry code for visitors and delivery personnel. The gate’s remote control was solar-powered with a battery backup and featured a manual override. By the time of trial, Appellants had relocated and leased their property. Their tenant testified that both he and his guests had no problems using the gate over the past year.[4] Appellants presented testimony that the value of their property was impaired by the existence of the gate. Additionally, Appellants testified that they refused to use the remote control provided or otherwise use the electronic gate to avoid any argument that they consented to its existence.
The trial court entered a final judgment declaring that the language of the easement did not prevent Appellee from erecting a gate across the easement and that the gate was not an unreasonable interference with Appellants’ access to their property. The trial court found the manual gate erected by the Appellants created an unreasonable burden on Appellee and enjoined Appellants from using or maintaining their separate gate to and from S.R. 19. It further ordered the removal of Appellants’ gate and restoration of the fence as near as possible to its original condition.[5]
The issue on appeal is whether the language of the easement providing for “free and unencumbered access” precluded construction of a gate. Appellants interpret this language to mean an open, unobstructed pathway. This court’s de novo review leads us to conclude otherwise. Amer. Quick Sign, Inc. v. Reinhardt, 899 So.2d 461, 467 (Fla. 5th DCA 2005). Central to the analysis is that a landowner burdened by an easement may use proper *1189 ty in any manner that does not interfere with the dominant estate owner’s rights under the easement. Perlini v. Seminole Woods Cmty. Ass’n, Inc., 582 So.2d 1221, 1224 (Fla. 5th DCA 1991).
The court in BHB Development, Inc. v. Bonefish Yacht Club Homeowners Association, Inc., 691 So.2d 1174, 1176 (Fla. 3d DCA 1997), set forth the general rule concerning the right of a servient landowner to construct a gate across an easement:
[T]he grant of a way without reservation of the right to maintain gates does not necessarily preclude the owner of the land from doing so, and unless it is expressly stipulated that the way shall be an open one, or it appears from the terms of the grant or the circumstances that such was the intention, the owner of the servient estate may erect gates across the way, if they are constructed so as not to interfere unreasonably with the right of passage.
20 Fla. Jur. 2d Easements § 36 (1980).
To insure certainty, parties who want to keep an easement free of gates or other obstacles can specifically express that intention in the document. However, failure to do so does not preclude the right to erect a gate so long as it does not interfere unreasonably with the right of way. We do not agree that the language Appellants rely on clearly expresses a prohibition on gates. Further, the trial judge did not err in determining that the gate did not unreasonably interfere with Appellants’ easement, and there was substantial, competent evidence to support that finding. We find no merit to Appellants’ other issues.
AFFIRMED.
LAWSON and EVANDER, JJ„ concur.

. Robert Frost, Mending Wall.

. Appellants later purchased the second five-acre parcel.

. There was testimony presented at trial establishing the electronic gate was a redundant measure.

. Although the tenant's lease required him to use the manual gate Appellants erected, he used the electronic gate because the manual gate was off its hinges and had to be dragged open and shut.

.Because Appellants failed to seek a stay, removed the gate and restored the original fence, this issue was abandoned for purposes of appeal.