MAY, C.J.
A parking space dispute brings this case to our court. Parcel G owners appeal a declaratory judgment that determined that Parcel F-2 owners have an easement over Parcel G for the purpose of accessing certain parking spaces. In the declaratory judgment, the court also determined that any breach of an existing parking agreement was cured by the Parcel F-2 owners. The Parcel G owners argue that the court erred in entering the declaratory judgment. We find no error and affirm.
Parcels F and G adjoin each other; Parcel G is north of Parcel F on the Intracoas-tal Waterway. In April, 2001 a restaurant and paved parking existed on Parcel G. A paved parking area, a CBS wall, and a building under construction existed on Parcel F.
Previous owners of both parcels entered into a parking agreement in 1987. After a dispute arose, the then current parcel owners entered into a “First Amendment and Restatement of Parking and Access Agreement.” It provided in part:
h. The parties desire to amend, modify and completely restate the Cross Parking Agreement ... and express the rights and obligations of the parties and their respective properties with regard to cross-parking, common ingress and egress, maintenance, and additional rights and privileges as part of a general plan for the beneficial use and development of each of Parcel F and Parcel G, and as a covenant running with the land.
... [T]he parties to this Agreement hereby agree that the Cross Parking Agreement is amended and restated in its entirety to read as follows:
3.... A surveyor’s sketch of Parcels F and G and the designation of parking spaces thereon referred to as the “Parking Lot Plan” is attached hereto as Exhibit “B.”
The combined and contiguous parking areas located within Parcels F and G are depicted within the bold perimeter boundary on the Parking Lot Plan. Those portions of the parking areas depicted in the Parking Lot Plan that are located within Parcel F are hereafter referred to as the “Parcel F Parking Area.” Those portions of the parking areas depicted in the Parking Lot Plan that are located within Parcel G are hereafter referred to as the “Parcel G Parking Area.” The Parcel F Parking Area is the area upon which a parking and access easement is made available *945 for vehicular access and parking for the shared benefit of Parcel F and Parcel G, as more fully hereinafter described.
4. The parties agree to the restricted use of parking on Parcel F, as depicted in the Parking Lot Plan as follows:
a. The location and designation of one hundred forty-two (142) available parking spaces, located within the Parcel F Parking Area:
(1) [59 parking spaces to be for exclusive use of [Parcel F owner] weekdays from 5 a.m. to 5:30 p.m.; 58 spaces to be for exclusive use of [Parcel G owner] weekdays from 5 a.m. to 5:30 p.m.]
(2) [40 spaces to be shared by [Parcel F & G owners] weekdays after 5:30 p.m. and weekends; 94 spaces for exclusive use of [Parcel G] weekdays after 5:30 p.m. and weekends]
5. Irrevocable and perpetual easements in, on and over the Parcel F Parking Area are confirmed as granting and creating, for the use and benefit of [Parcel G owner] and all lessees, guests, employees, for invitees and patrons of the business or improvements presently and to be located upon Parcel G, access, ingress and egress by pedestrian and vehicular traffic over, through and across the Parcel F Parking Area. No change in the location of the driveways and each of the 142 parking spaces within the Parcel F Parking Area shall be made without the prior written consent of both [Parcels F and G owners].
In May, 2001 the Parcel F owner conveyed the property to Harbor Investment, Ltd. In March of 2003, Harbor Investment, Ltd. replatted Parcel F into Parcels F-l and F-2. In July of 2003, portions of Parcel F-l were conveyed to Lennar Homes, Inc., which constructed townhomes on the property. In August of 2003, the Parcel G owner conveyed the property to the current owners.
In November of 2005, Harbour Investment, Ltd. obtained approval from the Town of Jupiter to construct a medical office building on part of Parcel F-2. In September of 2007, Harbour Investment, Ltd. conveyed Parcel F-2, and the associated development rights, to the current Parcel F-2 owner.
The site plan for Parcel F-2 reflected three parking spaces toward the northeast side of the F-2 Parcel along the border between the F-2 and G parcels. The parties refer to these three parking spaces as the “triangle spaces.” Given the location of the triangle spaces and the medical building permitted by the site plan, it was apparent that the “triangle spaces” could not be accessed except by traveling onto Parcel G.
The site plan also called for the construction of a pedestrian walkway on Parcel F from the main road to the medical building. The construction of the walkway resulted in the loss of parking spaces located on Parcel F. The April 2001 parking agreement affords use of the lost parking spots to Parcel G.
In April of 2008, the Parcel G owners filed a declaratory judgment action against the Parcel F-2 owners, seeking a declaration that the April 2001 amended parking agreement had not given the owners of Parcel F-2 an easement over Parcel G for the purpose of accessing the triangle spaces. The complaint further alleged that the Parcel F-2 owner had no right to construct the pedestrian walkway in the approved site plan because it would interfere with the parking rights afforded the owners of Parcel G by the April 2001 parking agreement. The Parcel F-2 owner counterclaimed for a declaration in its favor, and asserted, among other affirmative defenses, that the Parcel G owners *946 were estopped from seeking declaratory-relief as they were aware of the Parcel F-2 owner’s rights under the agreement and “knew or should have known that the owners of Parcel F were able to transgress Parcel G to utilize the spaces when the Agreement was initially drafted.”
Parcel G owners offered testimony that the newly constructed walk-way resulted in the loss of three to four parking spaces to Parcel G. The Parcel F-2 owner correspondingly offered testimony that the walkway had resulted in the loss of only two parking spaces to Parcel G. To remedy the loss of the two spaces, the Parcel F-2 owner contracted with the adjoining marina to secure two spaces for the exclusive use of the Parcel G owners.
As for the “triangle spaces,” the Parcel G owners acknowledged they were aware that a building was to be constructed on Parcel F and the three “triangle spaces” had curbing that blocked access from Parcel F when they purchased the property. The Parcel G owners testified that, during construction of the medical building on Parcel F-2, the curbs around the “triangle spaces” had been removed. They took the position that the inability to access the “triangle spaces” was the result of the development and design on Parcel F-2. Admittedly, the Town of Jupiter requires curbs around the parking spaces.
The Parcel F-2 owner provided testimony of a former owner of Parcel F, who signed the parking agreement on behalf of Harbour Investment. He testified that: (1) the parties intended for the three “triangle spaces” to be shared by Parcel F and Parcel G; (2) the curbs around the “triangle spaces” were present when the agreement was signed; (3) the “triangle spaces” were depicted on the Parking Lot Plan, Exhibit B to the parking agreement; (4) cars traveled over Parcel G to access the “triangle spaces” when the agreement was signed; and (5) this traffic pattern continued without objection afterward.
The trial court ruled that the parking agreement was unambiguous and created an express easement over Parcel G for the purpose of allowing Parcel F owners and patrons to access the “triangle spaces”. The trial court further found that, even if the agreement was ambiguous, the parties’ habitual use of Parcel G to access the “triangle spaces” on Parcel F evidenced the intent to create an easement. Further, the trial court found the doctrines of laches and waiver barred the Parcel G owners from obtaining relief. Although the construction resulted in a loss of two parking spaces to Parcel G, there was no violation of the parking agreement because the Parcel F owners replaced the two lost spaces. The Parcel G owners appeal the declaratory judgment.
“ ‘The interpretation or construction of a contract that is clear and unambiguous is a matter of law that is reviewed de novo.’” Amquip Crane Rental, LLC v. Vercon Constr. Mgmt., Inc., 60 So.3d 536, 539 (Fla. 4th DCA 2011) (quoting Lipton v. First Union Nat’l Bank, 944 So.2d 1256, 1258 (Fla. 4th DCA 2007)). A trial court’s construction of an ambiguous contract will be affirmed when it is supported by competent substantial evidence. See Dinallo v. Gunster, Yoakley, Valdes-Fauli & Stewart, P.A., 768 So.2d 468, 471 (Fla. 4th DCA 2000).
On appeal, the Parcel G owners contend the trial court erred in finding the parking agreement created an express easement because the plain and unambiguous language of the agreement establishes that Parcel F-2 is subservient to Parcel G. They suggest the only express easement in the agreement exists in favor of Parcel G. The Parcel F-2 owners respond that the parking agreement, attached parking lot *947 plan, and testimony established the parties’ intent to create an easement on Parcel G.
“Although an easement is not an estate in land and its creation does not convey title, it is an interest that gives to one other than the owner a right to use the land for some specific purpose.” Am. Quick Sign, Inc. v. Reinhardt, 899 So.2d 461, 464 (Fla. 5th DCA 2005). “[A]n easement may be created by express grant contained in a deed or other written document.” Id. at 465. “There are no magical words that one must divine in order to create an express easement. All that is necessary are words showing the intention of the parties to create an easement on a sufficiently identifiable estate.” Id. And, “[documents that convey easements should be construed in the same manner as contracts.” Id.; see also Sandlake Residences, LLC v. Ogilvie, 951 So.2d 117, 119 (Fla. 5th DCA 2007).
We agree with the Parcel G owners on their first point. The parking agreement expressly provides an easement in favor of the Parcel G owners. It does not express in words an easement in favor of the Parcel F-2 owners as it relates to the “triangle spaces.”
Nevertheless, “ ‘[t]he contract should be reviewed as a whole and all language given effect’ ” and “ ‘[a]n interpretation which gives a reasonable meaning to all provisions ... is preferred to one which leaves a part useless or inexplicable.’ ” PNC Bank, N.A. v. Progressive Employer Servs. II, 55 So.3d 655, 658 (Fla. 4th DCA 2011) (quoting Leisure Resorts, Inc. v. City of W. Palm Bch., 864 So.2d 1163, 1166 (Fla. 4th DCA 2003)).
If the document is ambiguous, “extrinsic evidence may be examined to determine the intent of the parties at the time the document establishing the easement was created.” Am. Quick Sign, 899 So.2d at 465. “[E]vidence relating to the character of the dominant and servient land, its use, and the situation of the parties to the easement, at the time the easement was created” are thus properly considered where there is ambiguity. Corrigans v. Sebastian River Drainage Dist., 223 So.2d 57, 58 (Fla. 4th DCA 1969).
While we disagree with the trial court’s finding that the parking agreement is unambiguous, we do agree that the agreement with its attached parking lot plan created an ambiguity allowing the trial court to consider parol evidence. The testimony of the witnesses, along with the agreement and attached parking lot plan, established the parties’ intent to create an easement by substantial, competent evidence. As the trial court found:
Section 3 of the Parking Agreement provides that the Parcel F parking lot is to operate for the shared benefit of both Parcels F and G. Section 4 and Exhibit B of the Parking Agreement outline [Parcel F owner’s] exclusive right to use the three parking spaces during the day and right to share use of those spaces with the [Parcel G owners] on nights and weekends. Composite Exhibit A and Exhibit B to the Agreement further outline the existence of curbing around the three spaces and that such curbing makes access to the spaces only possible by traversing Parcel G.
Reason and rationality dictate that the original signatories to the Parking Agreement would not have given the owner of Parcel F the right to use the three disputed parking spaces without also giving the ability to access those spaces. An interpretation of the plain language of the Agreement to the contrary would lead to an absurd result. King v. Bray, 867 So.2d 1224, 1227 (Fla.
*948 5th DCA 2004) (where one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in a rational manner); Paddock v. Bay Concrete Indus., Inc., 154 So.2d 313, 315-16 (Fla. 2d DCA 1963) (same).
“ ‘The inconvenience, hardship, or absurdity of one interpretation of a contract or its contradiction of the general purpose is weighty evidence that such meaning was not intended when the language is open to an interpretation which is neither absurd nor frivolous and is in agreement with the general purpose of the parties.’ ” Am. Med. Int’l, Inc. v. Scheller, 462 So.2d 1, 7 (Fla. 4th DCA 1984) (quoting James v. Gulf Life Ins. Co., 66 So.2d 62, 63 (Fla.1953)). It would be absurd to suggest that the parties intended that Parcel F-2 owners would not be able to access the shared “triangle spaces.”
There was substantial, competent evidence to support the trial court’s conclusion that an easement was created by the parking agreement, its attachment, and the parties’ long-term use of those spaces by traversing over Parcel G’s property. We need not address the laches and estop-pel arguments. We further find no error in the trial court’s conclusion that the Parcel F-2 owners remedied any alleged breach when two parking spaces were eliminated by the construction of a pedestrian walkway by providing two alternative parking spaces. For these reasons, we affirm.

Affirmed.

GROSS, J., and STREITFELD, JEFFREY E., Associate Judge, concurs.