West Penn Power Company, Appellant *v.* Wilma Bruni, Sirio E. Bruni and Raymond Bruni, Appellees.

Argued May 2, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT and DISALLE.

*Stephen D. Marriner,* with him *McCreight, Marriner & Crumrine,* for appellant.

*Frank A. Conte,* for appellees.

OPINION BY JUDGE WILKINSON, JR., June 16, 1978:

This is an appeal from a decision of the Court of Common Pleas of Washington County holding that the appellant had effectuated a de facto taking of appellees' land.[1] We reverse.

Appellees own a 154.17 acre tract of farmland in Peters Township, Washington County. In 1963 appellees entered into an agreement with the appellant granting it certain easements and rights of way for the purpose of constructing and maintaining an electric substation and electric power lines. The agreement further provided that appellant could construct

---

[1] Following the filing of this appeal, the appellees filed a motion to quash on the grounds that the decree of the trial court was interlocutory. This motion was dismissed, without prejudice, with a citation of authorities. Appellees briefed and argued this point without renewing the motion. We see no reason to disturb the dismissal of the motion nor any basis for our raising the question, *sua sponte.*

up to 14 poles and two (2) towers on appellees' property, as well as "such anchors, guys, wires, cables, and fixtures as the said GRANTEE [appellant] may deem necessary, including the right from time to time to install additional wires, cables, and fixtures, upon, over, under, along, across, and through land of [appellees]."

In 1971 appellant erected upon the designated 50 foot right of way two steel poles. These steel poles carry one electric line carrying 138,000 volts. The wooden poles had on them two electric lines, one carrying 12,000 volts and the other 25,000 volts. In addition, while the wooden poles were about 45-50 feet in height, the steel poles are about 75-85 feet in height.

The trial court basically relied on four factors in finding a de facto taking. First, it referred to the difference in the voltage carried by the lines on the wooden poles as opposed to that carried by the steel pole line. There is no limitation on the voltages lines may carry in the right of way agreement. Second, the trial court relied on its belief that it is the prevailing practice for the appellant to acquire a one hundred foot right of way when constructing steel poles of the type under consideration here. Thus, the trial court in effect concluded that the appellant had taken an additional 50 foot right of way. There is no evidence in the record to support the finding of such a practice, even if it were relevant. Third, the trial court referred to the steel poles as towers. Since the appellant had constructed the allowable number of towers prior to 1971, this would necessitate a finding that the quota specified in the agreement had been exceeded. Fourth, the trial court concluded that since the steel poles in question were not in use at the time of the 1963 agreement, their use was not within the scope of the agreement as contemplated by the parties at the time they entered into it. There is nothing in

the record to support either the third or fourth reason.

The appellees undertook a heavy burden in attempting to establish a de facto taking of their land. *Helms v. Chester Redevelopment Authority*, 32 Pa. Commonwealth Ct. 377, 379 A.2d 660 (1977). The appellees must demonstrate that there exist exceptional circumstances which have substantially deprived them of the beneficial use and enjoyment of their property beyond those rights granted in the right of way agreement. *Commonwealth's Crosstown Expressway Appeal*, 3 Pa. Commonwealth Ct. 1, 281 A.2d 909 (1971). We do not believe that the appellees have met this burden.

We do not see how the difference in the voltage carried by the two sets of poles effects a de facto taking of additional land by the appellant. There is nothing in the record to indicate that this additional voltage creates a hazard that would in some way substantially deprive the appellees of the beneficial use and enjoyment of their land outside the 50 foot right of way. Nor does the agreement specify the voltage to be carried over the electrical lines under consideration. To the contrary, it clearly provides appellant with the right to construct additional lines without mentioning any limitation of voltage.

Similarly, there is nothing in the record to support the trial court's conclusion that appellant took a 100 foot right of way in connection with the construction of the steel poles. Absent some affirmative evidence, we will not speculate as to appellant's past or current practice in this area. With respect to the trial court's characterization of the steel poles as "towers," we believe that the exhibits and the testimony clearly do not support this conclusion. While the steel poles are much higher than the wooden poles, and are, of course, made of a different material, they bear a much

stronger resemblance to the wooden poles than they do to the towers and, indeed, are sometimes referred to by appellee, inadvertently perhaps, as steel poles. The fact that the towers and the steel poles carry electrical lines with the same voltage does not dictate a contrary result any more than it would if wooden poles carried wires with similar voltage.

The final basis upon which the trial court relied in finding a de facto taking was that the use of the steel poles was outside the scope of the 1963 agreement. We find nothing to support such a conclusion.

In brief, appellees have not produced any evidence in this record to support a conclusion that appellant, in erecting these two steel poles and installing the new wire within the right of way previously granted by appellees, has exceeded the rights granted to it in the right of way agreement.

Accordingly, we will enter the following

ORDER

AND Now, June 16, 1978, the decision of the Court of Common Pleas of Washington County, at No. 507 January Term, 1976, dated July 20, 1977, is reversed.

Judge DiSALLE dissents.