594 So.2d 789 (1992)
FLORIDA POWER CORPORATION, a Florida Corporation, Appellant,
v.
Andrew J. LYNN and Richard M. Haber, As Co-Trustees of the Christine Priest Trust, and Andrew J. Lynn, Individually, As Tenants in Common, and Andrew J. Lynn, Lillian E. Lynn and Richard M. Haber, As Co-Trustees of the Andrew A. Lynn Trust; Citizens Bank of Clearwater, a Florida Banking Association; Hillsborough County, a Political Subdivision of the State of Florida; Joanne Hixon Shell F/K/a Joanne Hixon Mills and Julia Elaine Hixon Johnson; Lila Y. Hixon; E.E. Chaires, Jr.; Tait S. Scott and Dorothy Louise Scott; Federal Land Bank of Columbia, South Carolina, a Corporation Organized, Chartered and Existing under the Laws of the United States of America; Ada M. Manning and Walter W. Manning; Jean W. Smolek and Alfred W. Wilson, As Trustees of the Edward J. Smolek Family Trust, and Alfred W. Wilson, Individually; and Gary Edens and Jack J. Craparo, Appellees.
No. 91-01827.
District Court of Appeal of Florida, Second District.
January 24, 1992.
*790 Albert H. Stephens, Harry A. Evertz, III, Christopher R. Fitzpatrick, and Pamela I. Smith of Florida Power Corporation, St. Petersburg; Bruce C. Crawford of Owen, Crawford and Owen, St. Petersburg; and Sylvia H. Walbolt, Gary L. Sasso and D. Matthew Allen of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellant Florida Power Corp.
Steven L. Brannock, Ellen Neil Kalmbacher and Roy E. Dean of Holland & Knight, Tampa, for appellees Shell and Johnson.
Louise B. Bothwell, Tampa, amicus curiae brief for Hillsborough County.
Paul A. Straske of Straske, Farfante & Trupp, P.A., Tampa, for appellee Chaires.
David H. Galloway, Plant City, for appellees Manning.
CAMPBELL, Judge.
Appellant, Florida Power Corporation (F.P.C.), appeals the final order denying a taking of three parcels of land which were the subject of F.P.C.'s condemnation action in the trial court. Appellees are the owners of the parcels at issue. Hillsborough County has appeared as amicus curiae and, in that capacity, has adopted appellees' answer brief. We reverse.
F.P.C. began its condemnation action under section 74.031, Florida Statutes (1983), to acquire the property necessary to construct a 500 kilovolt (500 KV) transmission line through Pinellas, Hillsborough and Pasco Counties. The line was designated the Lake Tarpon-Kathleen transmission line and had been authorized to be constructed along the proposed corridor by the Florida Public Service Commission and the governor and cabinet sitting as the Florida Siting Board. F.P.C. sought to effect a quick taking of ninety-foot easements across the three parcels. The approved corridor for F.P.C.'s proposed transmission line contemplates combining the ninety-foot easements sought across appellees' parcels with abutting 100-foot easements F.P.C. had acquired in 1951 for a previous transmission line (the Higgins-Ft. Meade 115 KV line), so as to form the 190-foot easement needed for the new Lake Tarpon-Kathleen line.
F.P.C. has also initiated proceedings to obtain the necessary easements across numerous other parcels that are not the subject of this appeal. Those proceedings cannot be pursued until instant proceedings are resolved.
In the final order, the trial court denied F.P.C.'s request for a taking of the ninety-foot easements across appellees' lands on the basis that F.P.C. had lost its rights in and under the terms of the preexisting 100-foot easements because of F.P.C.'s nonuse of those easements for their intended purposes. It is significant that appellees concede and the trial judge found that the elements of a legal abandonment by F.P.C. of the previous 100-foot easements are not present in this case. The effect of the trial judge's ruling is that F.P.C. must acquire from and pay appellees for all of the 190 feet it needs for the construction of the Lake Tarpon-Kathleen line. The important and applicable parts of the preexisting *791 100-foot easements upon which the trial judge based his findings of nonuse are as follows:
That the undersigned, in consideration of the sum of One Dollar and other valuable consideration, the receipt of which is hereby acknowledged, grant and convey to FLORIDA POWER CORPORATION, its successors and assignees, the right, privilege and easement to construct, operate and maintain for such period of time as it may use the same or until the use thereof is abandoned, a tower line for the transmission and distribution of electricity, including necessary communications and other wires, anchors, ground connections, attachments, fixtures, equipment and accessories desirable in connection therewith over, upon and across the following described land... . Together with the right to patrol, inspect, alter, improve, repair, rebuild or remove such lines, equipment and accessories, including the right to increase or decrease the number of wires and voltage, together with all rights and privileges reasonably necessary or convenient for the enjoyment or use thereof for the purposes above described, including the right to trim, cut and keep clear such trees, limbs and undergrowth along said lines, and all trees adjacent thereto that may endanger the proper operation of the same, and including the reasonable right to enter upon adjoining lands of the grantors for the purpose of exercising the rights herein granted.
The issue before this court, therefore, is simply whether the trial judge was correct in ruling that F.P.C. had lost its previously existing rights in the 100-foot easements it had acquired and used for the Higgins-Ft. Meade 115 KV line because it had discontinued use of its tower line for the transmission and distribution of electricity. Inasmuch as the facts essential to a resolution of this issue are not in substantial dispute by the parties, we are called upon merely to interpret the terms of those previously existing easements in light of the undisputed facts. Since such an exercise in the interpretation of a contract amounts to the resolution of a question of law, we, as an appellate court, are not bound to give the trial judge's interpretation any weighted presumption of correctness. Hillsborough County v. Kortum, 585 So.2d 1029 (Fla. 2d DCA 1991). To the contrary, we are obligated to make our decision based upon the construction of the language of the previous easements which we determine to be the most reliable and correct under established precedent.
The essential facts established in the trial court show that in 1951, when F.P.C. purchased the 100-foot easements across appellees' lands, it had no existing transmission line across those lands. Those easements were acquired for the purpose of the future construction of what became known as the Higgins-Ft. Meade 115 KV line, the construction of which was begun in 1952. After it had been constructed and used for a number of years, F.P.C. deenergized and retired the Higgins-Ft. Meade line in December 1984. While that line is no longer an active or connected line, F.P.C. has continued to retain some of the transmission lines and towers of that line on appellees' lands. F.P.C., albeit on a nonregular basis, has continued necessary patrol, inspections, maintenance and repairs of that portion of the Higgins-Ft. Meade line that lies along the easement across appellees' lands.
Appellees, prior to F.P.C.'s action to condemn the extra ninety feet needed for the proposed new Lake Tarpon-Kathleen line, had taken no steps to deny or claim adversely to F.P.C.'s rights created under the easements acquired in 1951 or to oppose the maintenance of the easements and the towers and line that remained on their lands after the deactivation of the transmission line. There is, likewise, no evidence that when F.P.C. discontinued the actual transmission of electrical power over the Higgins-Ft. Meade line it had no intent to actively utilize the existing easements sometime in the future for the transmission of electrical energy.
There was evidence that among a number of options F.P.C. had for the 1951 easements after deactivation of the Higgins-Ft. Meade line, there was one which *792 involved a possible sale or assignment of F.P.C.'s easement right. However, since the easements run to F.P.C., as the grantee of the rights created thereby, and F.P.C.'s "successors and assignees," that evidence alone does not convince us of F.P.C.'s "nonuse" under the terms of the easement, so as to destroy F.P.C.'s rights in the easements. To the contrary, there was other evidence that at the time F.P.C. deenergized the Higgins-Ft. Meade line, one of its optional routes for its proposed Lake Tarpon-Kathleen line, and indeed the one ultimately chosen and approved, was along those same 1951 easements. F.P.C. had, on February 6, 1984, filed with the Florida Public Service Commission its petition for a certificate of need for the new transmission line that was ultimately approved as the Lake Tarpon-Kathleen line. On September 13, 1984, the Florida Public Service Commission entered its order certifying the need for F.P.C.'s proposed line. Then, in April 1985, F.P.C. filed its application for certification of the proposed corridor for the new line with the Florida Department of Environmental Regulation. Ultimately, on May 26, 1988, the Florida Siting Board entered its order certifying the corridor for the Lake Tarpon-Kathleen line.
In his "Conclusions of Law," the trial judge found that "[t]he 1951 Easement Agreements expired because FPC discontinued use of its tower line for the transmission and distribution of electricity." The trial judge also found that "FPC's nonuse of the easements since 1984 (a period in excess of 6 years) was clearly sufficient to effect a termination under the provisions of the agreements." We conclude that the trial judge did not attribute the required significance, under the terms of the easement agreements, to the fact that when F.P.C. deenergized the Higgins-Ft. Meade line in December 1984, it had previously, in February 1984, filed with the Florida Public Service Commission its petition for a certificate of need for its proposed new line and that the Florida Public Service Commission approved that petition in September 1984. Even after deenergizing the Higgins-Ft. Meade line, only four months elapsed before F.P.C. filed its application for certification of the proposed corridor for the new line. The trial judge's conclusions of law and findings of fact disregarded the importance of the sequence of those events in light of the fact that the 1951 easements specifically provided that F.P.C. had the right to "construct, operate and maintain ... a tower line for the transmission and distribution of electricity... . Together with the right to patrol, inspect, alter, improve, repair, rebuild or remove such lines, equipment and accessories, including the right to increase or decrease the ... voltage, together with all rights and privileges reasonably necessary or convenient for the enjoyment or use thereof for the purposes above described... ." (Emphasis supplied.)
The trial judge concluded that the 1951 easements were unambiguous and we agree. We cannot agree, however, that F.P.C. lost its rights under those easements when it deenergized the Higgins-Ft. Meade line, but continued to maintain, patrol and inspect the easements and towers located along appellees' lands in anticipation that it could utilize those easements for a new transmission line with increased voltage. When the terms of the easements grant F.P.C. the right to "rebuild or remove such lines," then the right to "use" the easements is not necessarily limited to the active and continuous transmission of electrical energy. The grantee of an easement, who has paid valuable consideration for rights to an easement to exist for the duration of the grantee's use thereof, should not be forced to compensate the grantor a second time because a primary use of the easement is temporarily suspended, albeit while there are plans being formulated to reactivate the easement to its full intended use. Reversion clauses providing for the termination of an interest in real property upon discontinuance of the use of such property for specified purposes are not favored in the law and will be strictly construed against the grantor. Dade County v. City of North Miami Beach, 69 So.2d 780 (Fla. 1953). Where, as here, the grantee has actively used the property for the purposes specified in the *793 granting of the easement and has continued to maintain the easement for the purpose of continuing that use in the reasonably foreseeable future, no claim of reversion by the grantor will be recognized.
Just as in Kortum, where we held that Hillsborough County should receive the benefit of the earlier reservation of a state road right-of-way reserved for the future widening of state roads, so we conclude here that F.P.C., in the plans for the future expansion of its electrical distribution system, was entitled to receive and rely upon the benefit and rights created in its earlier acquired easement, when its intended future use was in no way contrary to the uses specified in the easements.
We reverse and remand to the trial court for further proceedings consistent herewith.
SCHOONOVER, C.J., and ALTENBERND, J., concur.