727 So.2d 1149 (1999)
FLORIDA POWER CORPORATION, Appellant,
v.
SILVER LAKE HOMEOWNERS ASSOCIATION, etc., et al., Appellees.
No. 98-1697.
District Court of Appeal of Florida, Fifth District.
March 26, 1999.
Bruce Crawford of Crawford, Owen & Hines, P.A., St. Petersburg, for Appellant.
I. Ed Pantaleon of Shutts & Bowen LLP, Orlando, for Appellees.
PER CURIAM.
Florida Power Corporation (FPC), appeals a final summary judgment in which the trial court ruled that it exceeded the scope of a power transmission/distribution line easement granted to it in 1948, by constructing steel monopole structures to support transmission lines formerly supported by wooden H-frame structures. We reverse.
In 1948, Silver Lake Homeowners Association's predecessor in title, Overstreet Land Company, conveyed to FPC an easement for an electric transmission line over and across its property which provided:
Florida Power ... has the right, privilege and easement forever to construct, operate and maintain an H-frame line for the transmission and distribution of electricity, including necessary communication and other wires, poles, guy and brace poles, anchors, ground connections, attachments, fixtures, equipment and accessories desirable in connection therewith over, upon and across the following described land in Seminole County, State of Florida....

*1150 [Legal Description Omitted]
Together with the right to patrol, inspect, alter and improve, repair and rebuild the same and to remove such lines, wires, poles, attachments, equipment and accessories, including the right to increase or decrease the number of wires and voltage, together with all the rights and privileges necessary or convenient for the full enjoyment or use thereof, for the purposes above described, including the right to trim, cut and keep clear all trees, limbs and undergrowth along said lines and all trees adjacent thereto that may in any way endanger the proper operation of the same, including also the right to enter over adjoining lands of the grantors for the purpose of exercising the rights and privileges herein granted.
After obtaining the easement, FPC constructed a power line that carried 115 kilovolts of electrical power. The lines were supported by wooden H-frame structures, a common type of construction at that time.
Subsequently, in the late 1980s and early 1990s, the land subject to and adjacent to the easement area was platted and sold as residential property to the appellees. At the time the appellees acquired the underlying fee simple title, FPC's H-frame power lines were already in place. In 1995, FPC reconstructed the power line by removing the wooden H-frame structures and installing more modern steel monopole structures as replacements. The steel monopole structure is taller than the wooden H-frame structure and the voltage carried by the power line has been increased to 230 kilovolts. The steel monopole occupies the exact path of the prior wooden H-frame poles, and is completely contained within the same easement.
Appellees instituted this action against FPC seeking, inter alia, declaratory relief and inverse condemnation, alleging that the construction of the steel monopole structures exceeded the scope of the 1948 easement which only authorized the construction of an H-frame line. Appellees further assert that because steel monopole structures did not exist in 1948, there is no possibility the parties could have intended to allow such structures.
The construction or interpretation of an easement is not evidentiary; it is a matter of law. Hillsborough Co. v. Kortum, 585 So.2d 1029 (Fla. 2d DCA 1991), rev. denied, 598 So.2d 76 (Fla.1992). This court may reach a differing conclusion as to an easement's meaning without offense to the deference customarily accorded a trial court. Id. at 1031; see also Florida Power Corp. v. Lynn, 594 So.2d 789 (Fla. 2d DCA 1992), rev. denied, 602 So.2d 942 (Fla.1992). Accordingly, this court is in the same position as the trial court to determine the question of whether a summary judgment should have been awarded to the appellees. Shadow West Apartments, Ltd. v. State, Dept. of Transp., 498 So.2d 589 (Fla. 2d DCA 1986).
FPC was conveyed an easement for the purpose of transmitting and distributing electricity. In furtherance of that purpose, the easement specifies that FPC has the right to alter, improve, repair and rebuild, as well as the right to increase or decrease the number of wires and voltage, together "with all the rights and privileges necessary or convenient for the full enjoyment or use thereof...." Similarly, the law governing easements generally provides that an easement holder has the right to do what is reasonably necessary for the full enjoyment of the easement, but that the right must not be increased to any greater extent than reasonably necessary and contemplated at the time the easement was created. Crutchfield v. F.A. Sebring Realty Co., 69 So.2d 328 (Fla.1954). See also 20 Fla.Jur.2d Easements § 29 (1980) ("[A]n easement carries with it by implication the right to do what is reasonably necessary for the full enjoyment of the easement itself. Generally the rights of an easement owner are measured and defined by the purpose and character of the easement.") Further, case law from other jurisdictions indicates that the holder of an electric transmission line easement may avail itself of modern inventions and improvements so long as such action is within the scope of the easement. See Humphries v. Georgia Power Co., 224 Ga. 128, 160 S.E.2d 351 (1968); Hayes v. City of Loveland, 651 P.2d 466 (Colo.Ct.App.1982); West Penn *1151 Power Co. v. Bruni, 36 Pa.Cmwlth. 116, 387 A.2d 1316 (1978); Lower Colorado River Authority v. Ashby, 530 S.W.2d 628 (Tex.Civ. App.1975); and Central Power & Light Co. v. Holloway, 431 S.W.2d 436 (Tex.Civ.App. 1968).
In the instant case, FPC reconstructed its power line by replacing the antiquated wooden H-frame structures with modern steel monopole structures. The steel monopole structure is necessarily taller than the wooden H-frame structure as the voltage carried by the power line has been increased. Notwithstanding the steel monopole's taller height, it occupies the exact path of the prior wooden H-frame poles and is completely contained within the same prescribed easement area. We find the reconstruction by FPC to be within the scope of its 1948 easement. Accordingly, the summary judgment is reversed.
REVERSED.
PETERSON and THOMPSON, JJ., concur.
W. SHARP, J., dissents, with opinion.
W. SHARP, J., dissenting.
I think this case should either be affirmed or if there is an ambiguity concerning the interpretation of the Florida power easement (as the disagreement of four judgesthe trial judge and three appellate judges might indicate), the cause should be remanded for consideration of parole evidence to shed light on the intent of the drafter of the easement and the original parties.
The issue in this case is whether Florida Power is entitled to expand its existing transmission lines and mechanism without further condemnation proceedings. An expanded use of an easement may constitute an additional taking for which compensation must be paid.[1] An easement holder is entitled to make improvements necessary to enjoy an easement, but the holder must not unreasonably increase the burden on the servient tenement.[2]
What constitutes an over-burden depends on the circumstances of the parties, and the situation involved, and generalizations are difficult from reported cases.[3] For example, the paving of a road has been held to be a material change;[4] the use of an easement by cars and wagons has been held insufficient to permit use by heavy machinery and trucks;[5] and the increase in pipeline size and pressure was deemed an improper over-burden.[6]Hayes v. City of Loveland, 651 P.2d 466 (Colo.App.Ct.1982), cited in the majority opinion, found no additional taking concerning a power easement when H frames were replaced by towers, but the court relied on the fact that the owners failed to establish that the burden on their servient lands had increased, and on the rule in Colorado that damages based on a modification of a public improvement are not compensable if the damages are not different in kind, rather than degree, from the damages sustained by the general public. Neither apply to this case.
In this case the trial judge concluded, based on the pleadings and affidavits in the record, that Florida Power had exceeded the scope of the 1948 easement it had been granted, by constructing a steel monopole transmission/distribution line in place of the H-frame line. The H-frame structures were approximately 40 feet high. The monopoles are 110 feet highalmost triple the size of the H-frames. And the easement is surrounded by residential property owners. As a matter of logic, one could conclude that the unsightliness of the taller power structures have or will have a greater adverse impact, *1152 from an aesthetic point of view, on the residential owners, for which compensation should be awarded.[7]
The trial judge relied in part on the language of the easement, as is a proper basis upon which to rule in such cases.[8] The easement provides specifically that Florida Power has the right to "construct, operate and maintain an H-frame line for the transmission and distribution of electricity." The court noted that other power easements for lands in Seminole County, Florida, (where this easement is located)all drafted by Florida Power during the past 40 years specifically identify the kind of transmission structure intended. For example, some say the easement is for a tower line, some say an H-frame, and some say a single pole line. The court determined that the specific references have specific meanings and that a change upward constitutes an over-burden.
I disagree with the majority opinion in its view that the easement in this case gave Florida Power the absolute right to construct the towers in place of the H-frames merely because the easement also permitted Florida Power to improve, rebuild, and repair the H frames, and to increase the number of wires and voltage. Nor do I think the fact that the towers were placed within the easement area described by the easement document ipso facto allows the replacement of the H frames with much larger structures. If that is true, then there is no limit to the size of the transmission structures that can be built in the interest of bigger and better distribution of electrical power. In the alternative, whether these much-larger structures constitute an over-burden or excessive use of the easement should at least be resolved in the context of a fact finding hearing or trial.
NOTES
[1] 8A Patrick J. Rohan & Melvin Reskin, Nichols on Eminent Domain § 26.04[2] (3d ed.1998); 2 George W. Thompson, Commentaries on the Modern Law of Real Property § 444 Easements (John S. Grimes Replacement Vol.1980).
[2] Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land ¶¶ 8.03, 8.07[3] (rev. ed.1995).
[3] Id. ¶ 8.07[3].
[4] Id.
[5] Broward County v. Bouldin, 114 So.2d 737 (Fla. 2d DCA 1959).
[6] Houston Pipe Line Co. v. Dwyer, 374 S.W.2d 662 (Tex.1964).
[7] Rohan, supra.
[8] Thompson, supra.