WOLF, J.
Appellants challenge a final judgment of the trial court finding appellee, the Board of County Commissioners of Okaloosa County (County), did not abandon the use of a certain piece of property as a “County Courthouse Annex facility.” Finding no abandonment of use, the court concluded that a reverter clause contained within the 1973 deed had not been triggered. We find the trial court’s determination to be supported by competent substantial evidence and affirm.
On April 25, 1973, Shalimar Village, Inc. and Barnett Bank of Pensacola, predecessors in interest to appellants, conveyed property located in southern Okaloosa County to appellee. The deed provides for reversion in the event the property is not used as a County Courthouse Annex facility. Specifically, the deed provides:
This conveyance of all of the above parcels of land by both Shalimar Village, Inc. and Barnett Bank of Pensacola is subject to and is made, executed and delivered upon the express conditions hereinbelow set forth. If these said conditions, or any one of them be violated, or if the grantee shall fail to comply with any and all of these conditions, then and in that event title to each of the parcels of real property described above shall revert to and automatically vest in the respective grantor of said parcels herein, or in its successors and assigns.... Such conditions which are expressly made a part of this conveyance are as follows:
(1) The grantee shall accept and use the property described hereinabove solely for a permanent County Courthouse Annex facility, except that the grantee may, at its discretion, lease any unneeded portion of the said property as a site for the construction of a fire station.
(2) Construction of a permanent Courthouse Annex facility upon the property described hereinabove shall commence within 36 months from the date of this deed.
(Emphasis added).
The term “permanent County Courthouse Annex facility” is not defined within the deed. Therefore, without objection, the trial court correctly considered parol evidence concerning its meaning. See Barnett v. Destiny Owners Ass’n, Inc., 856 So.2d 1090, 1092 (Fla. 1st DCA 2003).
Judge Roger Vinson, who drafted the 1973 deed on behalf of the grantors, provided the trial court, in the words of the final judgment, “the most compelling testimony” regarding the grantors’ intended meaning of the term a “permanent County Courthouse Annex facility.” The trial court summarized Judge Vinson’s testimony as follows:
In drafting the particular language of the subject deed, Judge Vinson testified that the reverter clause was included because it was felt by his client that it was critical to the future of the entire development concept that the courthouse be a permanent part of the donated land. Judge Vinson testified that he used the word annex within the term permanent county courthouse annex facility, because the Grantors intended the courthouse to serve as an annex to the courthouse in Crestview and not to replace it. Judge Vinson also testified *1174 that it was not the intention of the Grantors to limit or restrict the other type of governmental functions that could by [sic] housed within the annex. To the contrary, the Grantors intended a full service courthouse which included one or more judges and courtrooms, as well as offices of the Clerk of the Court, Tax Collector, Property Appraiser, and other county offices normally housed within a courthouse. Judge Vinson testified that it was never the intent of the Grantor to specify numbers of judges or size of courtrooms. Nor was it the intention of the Grantors to prevent the County from constructing additional courthouse annexes in the future. Judge Vinson agreed that the intention of the Grantors at the time of making the subject deed was to create a recession proof industry geared to what the Grantors characterized as the “prestigious profession of law and its accompa.nying services.”
According to the uncontested facts of the final judgment, the County built the Annex in Shalimar, Florida, which was used for over 35 years. Initially, it included offices for the Board of County Commissioners, Tax Collector, Clerk of the Court, Property Appraiser, Supervisor of Elections, Sheriff, and two small courtrooms. As the population in the county grew, the number of county and circuit judges grew requiring multiple reconfigurations and the displacement of the Board, the Tax Collector, the Property Appraiser and the Supervisor of Elections. Much of the growth came at the expense of public safety and accessibility. In order for the facility to be maintained as a judicial facility, complete renovation would be required.
The County determined a new facility would meet the court needs, and the new Courthouse Annex Extension in Fort Walton Beach was opened in October 2011. All of the judges moved their offices and chambers to the Annex Extension, as well as most of the Clerk of Court. A small courtroom with judicial offices was left behind, as well as the Clerk of Courts archive, the Sheriff, civil process, and Guardian Ad Litem offices. Any use of the small courtroom was minimal, with appellants alleging the use was mere pretense.
Also in October 2011, the County issued a Request for Qualifications (RFQ) seeking proposals for two different options to renovate the Annex, one with 15,000 square feet of judicial presence and one without. Other governmental functions would include the Tax Collector, Property Appraiser, County Administration (including the Board offices), Supervisor of Elections and the Sheriff.
Prior to the move and RFQ, the County filed its original complaint for declaratory relief in April 2010, seeking guidance as to whether moving all of its judicial functions out of the Annex would violate the reverter clause. If the Court determined that some judicial use must remain to avoid triggering the reverter, the County contemplated maintaining some court functions at the Annex. The successor grantors filed an answer and counterclaim for declaration of reversion.
After a non-jury trial, consideration of exhibits, and written closing arguments, the trial court issued its judgment. In construing the deed provision, the trial court concluded that the parties intended that a permanent courthouse, with a full-time judiciary facility, be situated on the property and that the courthouse could also include other county offices. The facility “would, on a permanent basis, conduct the business of the court to include full-time judges, full-time staff, full-time courtroom space for circuit court and county court bench and jury trials.” Any decision as to the precise size and operation of *1175 the court would be a decision of the Chief Judge in consultation with the County. The court declared that
the Annex must provide a continuum of judicial services as described above so that the initial purpose of the Grantors to use the Annex to encourage the development and continuation of commerce within the surrounding area is accomplished.
The trial court went on to conclude that, if the County followed through with the RFQ for the 15,000 square feet of court facilities and the space was utilized on a full time basis, this would “satisfy the deed requirement for a permanent county courthouse annex facility.”
Relevant to this appeal, the trial court also declared that the County had not abandoned the use of the Annex property as a “permanent County Courthouse Annex facility.” In light of the obsolescence of the Annex, the court found that constructing the Annex Extension and issuing the RFQ to remodel the Annex were not actions which constitute abandonment of the property. Any delay in renovating the property while the County awaits the results of the declaratory action was also not an act of abandonment. The trial court also declared that the County was entitled to a reasonable amount of time to renovate the Annex consistent with the final judgment.
The successor grantors appealed the denial of their counterclaim of reversion based on abandonment, arguing the trial court lacked competent substantial evidence to find that the County had not abandoned the use.
The determination of abandonment of use is a factual question that will not be set aside on review unless totally unsupported by competent substantial evidence. See Clegg v. Chipola Aviation, Inc., 458 So.2d 1186 (Fla. 1st DCA 1984). A party asserting the issue of abandonment bears the burden of proving it. Dade County v. City of North Miami Beach, 69 So.2d 780, 783 (Fla.1953). Abandonment must be established by a “ ‘clear affirmative intent.’ ” Metro. Dade County v. Potamkin Chevrolet, 832 So.2d 815, 817 (Fla. 3d DCA 2002) (quoting Leibowitz v. City of Miami Beach, 592 So.2d 1213, 1214 (Fla. 3d DCA 1992)). Nonuse by itself is not abandonment, but is only evidence that may or may not point to abandonment. Dade County, 69 So.2d at 783. Further, “equity abhors a forfeiture,” particularly “when the forfeiture is against the public.” Id. Reduction in use during renovation or delaying development for legitimate public reasons is insufficient to show abandonment of a specified use. Leslie Enters., Inc. v. Metro. Dade County, 293 So.2d 73 (Fla. 3d DCA 1974). Finally, reversion based on discontinuance of a particular use is not favored and will be strictly construed against the grantor. Fla. Power Corp. v. Lynn, 594 So.2d 789 (Fla. 2d DCA 1992). Temporary suspension of the use with plans to reactivate the use in the reasonably foreseeable future will not trigger reversion. Id.
Appellants’ arguments focus on the lack of evidence that the County has not abandoned the use. This focus is misplaced. As the parties seeking reversion, appellants bear the burden of producing evidence of the County’s “clear affirmative intent” as manifested by action wholly inconsistent with continued use of the property. There is no evidence that constructing the Annex Extension somehow precludes continued judicial use of the Annex, nor do appellants challenge the trial court’s construction of the deed as not prohibiting a second facility. Further, the RFQ contemplates renovation that does not wholly exclude the possibility *1176 that judicial functions will continue at the Annex. While the RFQ did also seek a proposal without judicial functions, the request predated the final judgment informing the County that such a choice would trigger the reverter clause. Mere consideration of possible courses of action is not an affirmative act under these facts.
Appellants argue that the moment the judiciary moved from the Annex to the Annex Extension, the County abandoned the use. This argument ignores the cited case law that reduction of use and even non-use is not itself abandonment. Appellants point to years of county commission minutes as evidence of the County’s affirmative intent to only operate one judicial annex. These minutes, however, reflect discussions, not official actions evidencing a “clear affirmative intent” to abandon the use. Potamkin Chevrolet, 832 So.2d at 817. See also Woodlawn Park Cemetery Co. v. City of Miami, 104 So.2d 851 (Fla. 3d DCA 1958) (finding abandonment of a portion of a dedicated right-of-way when city passed an ordinance limiting the width of the street).
Further, appellants’ insistence that the reversion clause was triggered at the time the judiciary was moved to the new facility ignores the fact that the RFQ was made public during the same time period that the move occurred. Also, to the extent that appellants argue the RFQ was not relevant evidence because the RFQ was issued after the alleged abandonment, appellants did not challenge its admission into evidence at the trial court level.
Finally, by granting the County a “reasonable time” to make the renovations, the trial court has opened the door for appellants to come back in the future should the County unreasonably delay renovation and reinstatement of full-time court functions.
The trial court was correct to find that appellants failed to carry their burden of proving the Annex had been abandoned as a full-time permanent courthouse facility. The judgment of the trial court is supported by competent substantial evidence and is therefore AFFIRMED.
THOMAS and MARSTILLER, JJ„ concur.