NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LINDA L. SHAFFER,                          )
                                           )
        Appellant,                         )
                                           )
v.                                         )        Case No. 2D14-4205
                                           )
DEUTSCHE BANK NATIONAL TRUST,              )
AS INDENTURE TRUSTEE FOR                   )
AMERICAN HOME MORTGAGE                     )
INVESTMENT TRUST 2006-1,                   )
MORTGAGE BACKED NOTES,                     )
SERIES 2006-1,                             )
                                           )
        Appellee.                          )
_____    )

Opinion filed April 19, 2017.

Appeal from the Circuit Court for Manatee
County; George K. Brown, Jr., Senior Judge.

Jacqulyn Mack of The Mack Law Firm,
Englewood, for Appellant.

Kimberly S. Mello and Jonathan S.
Tannen of Greenberg Traurig, P.A.,
Tampa, and Patrick G. Broderick of
Greenberg Traurig, P.A., West Palm
Beach, for Appellee.


ROTHSTEIN-YOUAKIM, Judge.

Linda L. Shaffer appeals from a final judgment of foreclosure, arguing, among other things, that Deutsche Bank National Trust, as Indenture Trustee for American Home Mortgage Investment Trust 2006-1, Mortgage Backed Notes, Series 2006-1 (the Bank), lacked standing to foreclose. Because we agree that the Bank failed to prove that it had standing at the inception of the suit, we reverse.[1]

In September 2009, the Bank filed a complaint against Shaffer for mortgage foreclosure and to reestablish a lost note. Along with the complaint, the Bank filed a copy of the May 2009 assignment of the mortgage to the Bank from Mortgage Electronic Registration Systems, Inc., as nominee for the original lender, American Home Mortgage Acceptance Inc. (AHMAI). Before trial, however, the Bank filed with the court the original note and voluntarily dismissed the lost-note count. The note, which was dated September 21, 2005, identified AHMAI as the payee and bore an undated indorsement in blank.

At trial, Shannon Fretwell, a loan analyst for Ocwen, the note servicer, testified regarding Ocwen's boarding process and the documents that Ocwen had received from the previous servicer. One of those documents was a limited power of attorney (LPOA), effective July 2009, between the Bank and prior servicer American Home Mortgage Servicing, Inc. (AHMSI). The LPOA authorized AHMSI to act on behalf of the Bank in connection with, among other things, American Home Mortgage Investment Trust 2006-1, which, according to an exhibit attached to the LPOA, was dated March 29, 2006.

---

[1]Because we conclude that reversal is warranted on this ground, we decline to address Shaffer's other challenges to the judgment.

Based on her review of the LPOA, Fretwell testified that the loan had been transferred into the trust on March 29, 2006. She subsequently explained that, by "loan," she meant "note," and by "transferred," she meant that the note had been made "a party of the trust," i.e., the trust had "owned" it. We note, however, that nothing in the LPOA—or in any other document admitted at trial—establishes what American Home Mortgage Investment Trust 2006-1 comprised, and Fretwell did not indicate the basis for her testimony that the note itself had been transferred into the trust.[2] We also note, however, that Shaffer did not cross-examine her on that point despite having the opportunity to do so.

Regardless, even accepting Fretwell's testimony that the note itself was transferred into the trust on March 29, 2006, there is no evidence establishing what interest in the note AHMAI transferred to the Bank as trustee. There is no evidence establishing when the blank indorsement had been placed on the note, and the Bank did not properly introduce a copy of the Pooling and Servicing Agreement (PSA) establishing the duties, rights, and obligations of the parties to the trust.[3]

---

[2]The LPOA indicated that the trusts covered by its terms could include mortgages, deeds of trust, retail installment contracts, or promissory notes.

[3]Before trial, the Bank requested that the trial court take judicial notice of a partial copy of a PSA relating to the applicable trust. However, this PSA—a document personal to one of the parties—was not subject to judicial notice under either section 90.201 or section 90.202, Florida Statutes (2014). Moreover, the unauthenticated PSA was simply attached to a notice of filing and was, therefore, inadmissible at trial without further testimony. See, e.g., BAC Funding Consortium Inc. ISAOA/ATIMA v. Jean-Jacques, 28 So. 3d 936, 939 (Fla. 2d DCA 2010) (noting that an unauthenticated document attached as an exhibit to a motion did not constitute admissible evidence); Ciolli v. City of Palm Bay, 59 So. 3d 295, 297 (Fla. 5th DCA 2011) (noting that an unauthenticated document attached to a memorandum of law does not constitute competent evidence); Tunnell v. Hicks, 574 So. 2d 264, 266 (Fla. 1st DCA 1991) (noting that an unauthenticated letter attached as an exhibit to a motion was not admissible and

"[E]vidence that the note was transferred into the trust prior to the foreclosure action is insufficient by itself to confer standing because there [is] no evidence that the indorsee had the intent to transfer any interest to the trustee." Balch v. LaSalle Bank N.A., 171 So. 3d 207, 209 (Fla. 4th DCA 2015); see also Jarvis v. Deutsche Bank Nat'l Tr. Co., 169 So. 3d 194, 196 (Fla. 4th DCA 2015) ("[E]vidence that the note was physically transferred into a trust prior to Deutsche Bank filing its foreclosure complaint does not, by itself, establish standing."). Absent any evidence establishing the interest that AHMAI conveyed to the Bank when transferring the note into the trust, we conclude that the Bank failed to establish standing, and we reverse and remand with instructions for the trial court to enter an involuntary dismissal.

Reversed and remanded.

SILBERMAN, J., Concurs.
VILLANTI, C.J., Concurs specially with opinion.

---

not properly before the court). Because the PSA was not subject to judicial notice and because the Bank took no steps to authenticate it or introduce it into evidence at trial, the PSA was not properly before the court and cannot constitute evidence of the Bank's standing.

VILLANTI, Chief Judge, Concurring specially.

I concur in the majority's decision to reverse the final judgment of foreclosure. I write separately to note that while I agree that Deutsche Bank's evidence was legally insufficient to establish its standing to foreclose, I do not agree with all the reasons identified by the majority. I also write to express my concerns with several aspects of current foreclosure practice and to suggest ways to alleviate them.

The record in this case shows that Deutsche Bank filed its unverified foreclosure complaint on September 29, 2009. Attached to the complaint were a copy of the Shaffer mortgage in favor of American Home Mortgage Acceptance, Inc. (AHMAI), and a copy of a May 1, 2009, assignment of the mortgage to Deutsche Bank from MERS. No copy of the promissory note was attached to the complaint. Several months later, on February 5, 2010, Deutsche Bank filed the original promissory note, which was in favor of AHMAI and which was endorsed in blank. Importantly, the endorsement in blank was undated.

Apparently recognizing that the undated blank endorsement on the note was insufficient to establish its standing to foreclose, Deutsche Bank offered at trial the testimony of Shannon Fretwell, a loan analyst for Ocwen Financial Corporation, which was the current servicer of the Shaffer mortgage. Through Fretwell, Deutsche Bank offered evidence that Ocwen was the successor by merger to the original loan servicer, American Home Mortgage Servicing, Inc. (AHMSI). Also through Fretwell, Deutsche Bank introduced a copy of a limited power of attorney (LPOA) that authorized AHMSI to act on behalf of Deutsche Bank in, among other matters, foreclosure litigation relating to notes and mortgages held by Deutsche Bank in its capacity as trustee of a number of

asset and investment trusts. Fretwell testified that the LPOA established that the Shaffer loan became part of the American Home Mortgage Investment Trust 2006-1, Mortgage Backed Notes, Series 2006-1 (the trust) on March 29, 2006; however, she admitted that her testimony was based solely on her review of the LPOA and not any independent knowledge that she had of the note or the transaction.

Unfortunately for Deutsche Bank, a review of the LPOA does not support Fretwell's testimony. The LPOA, which is dated July 21, 2009, includes the trust on behalf of which Deutsche Bank purports to be acting as trustee in the foreclosure proceeding against Shaffer. However, nothing in the LPOA identifies any of the notes or mortgages that make up any of the trusts to which the LPOA applies. And while we will generally defer to a witness's trial testimony on factual matters, we need not do so when that testimony is nothing more than the witness's interpretation of a document that is equally available to this court. Cf. Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So. 2d 1000, 1002 (Fla. 2d DCA 1995) (noting that the appellate court is on equal footing with a trial court when interpreting a written document); Fla. Power Corp. v. Lynn, 594 So. 2d 789, 791 (Fla. 2d DCA 1992) (noting that the interpretation of a written document is a question of law, on which an appellate court need not defer to the trial court). Hence, neither the LPOA nor Fretwell's testimony establish when or if Deutsche Bank took ownership of the Shaffer note, and so neither can establish that Deutsche Bank had standing when the foreclosure complaint was filed.

In addition, no other document introduced at trial shows that the Shaffer note and mortgage are included in the Deutsche Bank trust. The record shows that prior to trial, Deutsche Bank filed a request for judicial notice, attached to which was a

partial copy of a Pooling and Service Agreement (PSA) relating to the applicable trust. However, this PSA—a document personal to one of the parties—was not subject to judicial notice under any of the provisions of either section 90.201 or section 90.202, Florida Statutes (2014). Moreover, the unauthenticated PSA was simply attached to a notice of filing, making it inadmissible at trial without further testimony. See, e.g., BAC Funding Consortium Inc. ISAOA/ATIMA v. Jean-Jacques, 28 So. 3d 936, 939 (Fla. 2d DCA 2010) (noting that an unauthenticated document attached as an exhibit to a motion did not constitute admissible evidence); Ciolli v. City of Palm Bay, 59 So. 3d 295, 297 (Fla. 5th DCA 2011) (noting that an unauthenticated document attached to a memorandum of law does not constitute competent evidence); Tunnell v. Hicks, 574 So. 2d 264, 266 (Fla. 1st DCA 1991) (noting that an unauthenticated letter attached as an exhibit to a motion was not admissible and not properly before the court). Because the PSA was not subject to judicial notice and because Deutsche Bank took no steps to authenticate it or introduce it into evidence at trial, the PSA was not properly before the court and cannot constitute evidence of Deutsche Bank's standing.

In sum, Deutsche Bank offered no evidence to establish that it owned the note on the date it filed the foreclosure complaint in this case, and it therefore failed to prove that it had standing. Shaffer's motion for involuntary dismissal should have been granted without further ado. For this reason, I agree with the majority's decision to reverse the final judgment in this case.[4]

---

[4]The majority cites to several cases that pertain to whether there was evidence that "the indorsee had the intent to transfer any interest to the trustee." Given that Deutsche Bank offered no admissible evidence that the Shaffer note and mortgage were ever transferred into the trust, I find these cases irrelevant to the issue of standing before this court.

I also take this opportunity to make two recommendations based on my observations from the flood of foreclosure litigation that this court has reviewed in the past few years. First, I believe it would behoove trial courts working in this area to create a checklist of sorts to ensure that they are making a proper ruling on the issue of standing. Information concerning standing that could be gathered from the court file prior to trial could be listed, with blanks for missing dates or information. As the trial progresses, the trial court could use the form to determine whether admissible evidence had been offered to fill in any blanks and whether the plaintiff had, in fact, established standing. This would avoid repetitious reversals based on simple failures of proof that are easily addressable with proper documents or connecting testimony.

Second, I believe it would behoove the legislature to consider amending the foreclosure statutes to require foreclosure defendants who wish to raise any defense other than payment to pay the amounts required by the note and mortgage into the court registry. It appears that many foreclosure judgments are entered based on dubious proof by the banks due to an understandable lack of sympathy for defendants who are years behind on payments and who are raising what appear to be spurious delaying defense tactics. Requiring foreclosure defendants to make their payments into the court registry would alleviate the temptation to excuse strict compliance with the laws of evidence. This method has been successfully utilized in tenant eviction cases in which tenants are free to raise defenses to an eviction, but may not do so while at the same time refusing to pay rent. See, e.g., § 83.232(1), Fla. Stat. (2014). Using chapter 83 as a template, the legislature could address the foreclosure backlog and ensure that foreclosure cases would be expedited without sacrificing due process.