[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12584

_____

D.C. Docket No. 3:17-cv-00335-MCR-HTC


A FLOCK OF SEAGIRLS LLC,                    3:17-cv-00335-MCR-HTC
formerly known as SWEAT EQUITY LLC,
VALENTINES HEIGHTS LLC,

                                            Plaintiffs - Appellants,

versus

WALTON COUNTY FLORIDA,

                                            Defendant - Appellee.

_____

VALENTINES HEIGHTS LLC,                    3:17-cv-00371-MCR-MJF

                                            Plaintiff - Appellant,

versus

WALTON COUNTY FLORIDA,

                                            Defendant - Appellee.

———————————————

Appeal from the United States District Court
for the Northern District of Florida

———————————————

(August 5, 2021)

Before NEWSOM, BRANCH, and LAGOA, Circuit Judges.

NEWSOM, Circuit Judge:

This case requires us to interpret the terms of a recorded easement that runs with two beachfront lots in Walton County, Florida. For nearly two decades, Walton County has held an easement across a 75-foot strip of dry-sand beach that runs parallel to the Gulf of Mexico's shoreline. The easement specifies that it shall be for the purpose of "a way of passage, on or by foot only." Importantly for our purposes, the easement also contains an abandonment clause, which provides in relevant part that the County will be deemed to have abandoned the easement if it "attempt[s] to use" the easement "for a purpose not specified [t]herein." In 2017, the County enacted an ordinance purporting to establish the public's right to use the dry-sand area of all beaches for "recreational" purposes—including, among others, "sunbathing," "picnicking," "fishing," "swimming or surfing off the beach," and "building sand creations." Two beachfront property owners sued the County, alleging that the ordinance triggered the easement's abandonment clause.

The district court granted summary judgment for the County, and the property owners now appeal.

We reverse. In particular, we hold (1) that the ordinance triggered the abandonment clause and (2) that no other source of law—Florida common law, separate provisions in the easement, a Walton County resolution, or a consent judgment—forestalls or limits the abandonment clause's operation.

## I

In the 1990s, the State of Florida initiated eminent domain proceedings against St. Joe Paper Company to take certain properties in Walton County. The suit resulted in a 1996 consent judgment in which the state agreed to exclude from the taking certain parcels of land in exchange for St. Joe's acceptance of land-use and development restrictions. The consent judgment included a specific requirement that the parties record a "permanent public access easement allowing public pedestrian access laterally along the beach" on 75 feet of the beach sand landward of the Gulf of Mexico's mean high water line. The consent judgment bound not only the parties to the eminent domain case—the state of Florida and St. Joe—but also their successors and assigns. In 1997, the County entered into a separate agreement with St. Joe, providing for a 20-foot easement between a public parking lot and the beach.

In 2000, St. Joe established the WaterColor Community Association, a homeowner's association. WaterColor's governing declarations affirmed that the consent judgment was binding on the association and all owners. Shortly thereafter, St. Joe recorded the specific plat that this appeal concerns and on which the 75-foot and 20-foot easements lie. In 2002, St. Joe recorded the 75-foot and 20-foot easements in a single agreement, which, for simplicity's sake, we'll just call "the easement," except where emphasis is necessary. The easement's stated purpose is to "provid[e] to the County, its citizens, employees, guests, invitees, and licensees, a way of passage, on or by foot only, over and upon the Easement Parcels." Critically here, the easement also includes an abandonment clause, which provides as follows:

> Abandonment. These easements shall continue in effect for so long as the County or its successor or assign shall use the easements for their intended purpose as expressed herein . . . . Should the County abandon the use of an easement granted herein for a continuous period of two (2) years or if the County should use or attempt to use an easement granted herein for a purpose not specified herein, all rights hereby grated shall cease and terminate and all of the County's interest in this Easement shall revert to St. Joe. Upon the happening of said abandonment or change in use, St. Joe shall obtain the County's consent that such abandonment has occurred or St. Joe may pursue appropriate legal action to address the abandonment or unauthorized use of the easement and request in such legal action that the easement be terminated. In the event St. Joe successfully proves in such legal action that the County has abandoned the easement for the period of two (2) years or used the easement for a purpose not specified herein, St. Joe shall be entitled to terminate the easement.

The easement further states that it "fully meets the requirements of Resolution 99-79," a Walton County development order that incorporated the terms of the 1996 consent judgment.

In 2017, the County enacted an ordinance purporting to "recognize[] and protect[]" the "public's long-standing customary use of the dry sand areas of all of the beaches in the County for recreational purposes." The ordinance goes on, more specifically, to "permit[]" members of the public to make the following "uses" of "the dry sand areas that are owned by private entities": "traversing the beach; sitting on the sand, in a beach chair, or on a beach towel or blanket; using a beach umbrella that is seven (7) feet or less in diameter; sunbathing; picnicking; fishing; swimming or surfing off the beach; placement of surfing or fishing equipment; and building sand creations."

A Flock of Seagirls LLC and Valentines Heights LLC own separate beachfront lots in the WaterColor community, each of which contains the 75-foot easement recorded in the 2002 agreement. The following graphic depicts the lots, the beach and shoreline, and the easement:

5



*A Flock of Seagirls' Property*

*Valentines' Property*

*The 75-Foot Easement*

A Flock of Seagirls filed a two-count complaint against the County in federal court, alleging that the ordinance (1) constituted an unconstitutional taking of their property rights and (2) triggered the easement's abandonment clause because it "attempt[ed] to use" the encumbered property for purposes other than a "way of passage, on or by foot only." Valentines filed a similar lawsuit, and the district court consolidated the two cases. While the consolidated case was

6

pending, the Florida legislature passed a bill that mooted the constitutional challenge by voiding the existing customary-use ordinances and imposing a new procedural scheme for passing such ordinances. *See* Fla. Stat. § 163.035. Because, despite the statute, by enacting the ordinances the County had arguably "attempt[ed] to use" the easement "for a purpose not specified [t]herein," litigation over the abandonment count continued.

The plaintiffs and the County both moved for summary judgment on the abandonment count. The district court granted summary judgment for the County. The court acknowledged that by enacting the ordinance, the County had attempted to use the easement for an "expanded purpose." It emphasized, though, that Florida law required that Flock of Seagirls and Valentines show evidence of an intent to abandon, and reasoned that uses that expand on, or are more comprehensive than, but are consistent with, the purpose of an easement, do not evince such an intent. Because, the district court reasoned, the ordinance contemplated uses that were consistent with (even if broader than) the easement's purpose, the plaintiffs hadn't shown an intent to abandon and thus hadn't demonstrated that the County had abandoned the easement. In support of its holding, the district court also looked to other sources referenced in the easement, including the resolution and its incorporated consent judgment, which the court

7

said narrowed the scope of, and to a degree even invalidated, the abandonment

clause. A Flock of Seagirls and Valentines now appeal.[1]

## II

To determine whether the County has abandoned the easement, we must

consider two separate questions. First, we must determine whether the ordinance

triggered the terms of the easement's abandonment clause. Second, we must look

to sources outside the abandonment clause—to Florida common law, other

provisions of the easement, the resolution, and the consent judgment—to

determine whether any of them forestalls or limits the abandonment clause's

operation.

## A

First, did the enactment of the ordinance trigger the terms of the

abandonment clause? In interpreting easements, we apply ordinary contract-

construction principles. *Am. Quick Sign, Inc. v. Reinhardt*, 899 So. 2d 461, 465

(Fla. 5th DCA 2005). Accordingly, we give easement terms their "common and

ordinary" meaning to "arrive at a reasonable interpretation of the text of the entire

[easement] to accomplish its stated meaning and purpose." *Murley v. Wiedamann*,

25 So. 3d 27, 29 (Fla. 2d DCA 2009) (quotation omitted).

---

[1] We review the district court's order granting summary judgment de novo, applying the same standards as the district court. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

Here, the easement's plain language provides that the County will be deemed to have abandoned the easement if it "should use or attempt to use an easement granted herein for a purpose not specified [t]herein." The County's customary-use ordinance undoubtedly covers land that includes the easement. The ordinance also sets forth the ways that the public may use that land. Accordingly, we have no trouble concluding that the County's enactment of the ordinance constituted an "*attempt* to use" the easement—whether or not the County ever actually used the easement.

The real question, therefore, is whether the County's attempted use was "for a purpose not specified" in the easement. Webster's Third defines "specify" to mean "to mention or name in a[n]. . . explicit manner." *Specify*, Webster's Third International Dictionary at 2187 (1961). The easement here names its purpose explicitly—to "provid[e] to the County, its citizens, employees, guests, invitees, and licensees, a way of passage, on or by foot only, over and upon the Easement Parcels." Certain uses contemplated by the ordinance—sunbathing, picnicking, fishing, swimming and surfing off the beach, placing surfing or fishing equipment, and building sandcastles—plainly entail purposes other than "a way of passage." And to the extent that there is any doubt about that, other language in the ordinance removes it. The ordinance purports to safeguard "[t]he public's long-standing customary use of the dry sand areas of all of the beaches in the County for

9

*recreational purposes*."  "[A] way of passage" refers to a locomotive purpose, not a "recreational" purpose.  We conclude, therefore, that the ordinance constitutes an "attempt to use" the easement for "a purpose not specified [t]herein."

We recognize, of course, that under Florida law "an easement carries with it by implication the right to do what is reasonably necessary for the full enjoyment of the easement."  20 Fla. Jur. 2d Easements § 41 (2021); *see also Fla. Power Corp. v. Silver Lake Homeowners Ass'n*, 727 So. 2d 1149, 1150 (Fla. 5th DCA 1999).  As a practical matter, pedestrian use of the County's easement for the purpose of "passage" may well entail incidental stopping.  Some of the uses set forth in the ordinance—"sitting on the sand," for instance—may fall into this category.  But others—*e.g.*, sunbathing, picnicking, fishing, swimming and surfing off the beach, and building sandcastles—go so far beyond incidental stopping that they can't fairly be deemed "reasonably necessary for the full enjoyment of the easement itself."

Accordingly, we hold that the customary-use ordinance triggered the terms of the easement's abandonment clause.[2]

---

[2] The County argues for the first time on appeal that the abandonment clause applies only to the 20-foot easement, not the 75-foot easement.  Because the County didn't fairly present that issue in the district court, we needn't consider it, *see Access Now, Inc. v. Sw. Airlines Co*., 385 F.3d 1324, 1331 (11th Cir. 2004), but we find it meritless, in any event.  The agreement defines the 75-foot and 20-foot easements separately, but the abandonment clause speaks of the "easements" generally, not specifically: "These *easements* shall continue in effect for so long as the County or its successor or assign shall use the *easements* for their intended purpose as expressed herein." The abandonment clause further makes clear that "should the County abandon the use of *an*

**B**

The County identifies three separate sources of law that it says limits the easement's abandonment clause: (1) Florida common law, (2) separate provisions in the easement, and (3) the resolution and the consent judgment.  We disagree as to all three.

**1**

The County argues that Florida common law enshrines the public's right to use the dry-sand areas of beaches for recreational purposes—whether or not the dry-sand area lies on an easement.  In particular, it relies on the following passage of the Florida Supreme Court's opinion in *City of Daytona Beach v. Tona–Rama, Inc.*:

> The beaches of Florida are of such a character as to use and potential development as to require separate consideration from other lands with respect to the elements and consequences of title.  The sandy portion of the beaches . . . has served as a thoroughfare and haven for fishermen and bathers, as well as a place of recreation for the public. The interest and rights of the public to the full use of the beaches should be protected.

294 So.2d 73, 77 (Fla. 1974).

---

*easement* granted herein… or if the County should use or attempt to use *an easement* granted herein for a purpose not specified herein, all rights hereby granted shall cease and terminate….”  Nothing in the agreement's language suggests that the abandonment clause pertains only to the 20-foot easement.

11

The public's right to "full use of the beaches," however, is not absolute or boundless, as *Tona-Rama* itself recognized and later decisions have reiterated. *See, e.g.*, *id*. at 78 (holding that the right of customary use applies "[i]f the recreational use of the sandy area . . . has been ancient, reasonable, without interruption and free from dispute" and, in any event, "is subject to appropriate governmental regulation and may be abandoned by the public"); *Trepanier v. Cnty. of Volusia*, 965 So. 2d 276, 290 (Fla. 5th DCA 2007) ("[S]ome or all of the customary uses by the public may be shown to have been abandoned."). If Florida's customary-use doctrine ensured the public's unlimited right to use the dry-sand beach area at issue here, neither the easement nor the ordinance—both of which aim (even if inconsistently) to confer usage rights on members of the public—would serve any meaningful purpose. We decline to adopt so unnatural a reading of Florida common law.

**2**

The County separately relies on two provisions in the easement that refer to it as "perpetual." Paragraph 2 refers to the County's "perpetual easements and rights-of-way," and Paragraph 3(c) to the "perpetual rights herein granted to the County." But a "perpetual" easement is merely one that doesn't expire of its own force—not one that can't be abandoned. Black's Law Dictionary defines "perpetual easement" and "permanent easement" in the same manner:

12

> An easement of potentially unlimited duration.  A permanent
> easement is often named using the form permanent x easement, where
> x is a descriptor that identifies the easement's purpose[.]  A document
> creating an easement described as 'permanent' might, in fact, specify
> a condition under which the easement will end, such as nonuse for a
> specified period.

*Perpetual Easement*, Black's Law Dictionary (11th ed. 2019).  Accordingly, an

easement may be "perpetual" or set forth "perpetual rights" and yet also specify "a

condition under which the easement will end."  The easement at issue here

contains just such a condition—as relevant here, an "attempt to use" the easement

for a purpose not "specified."  The County's reliance on Paragraphs 2 and 3(c) to

undermine the abandonment clause's operation is therefore misplaced.

**3**

Finally, the County relies on the resolution and the consent judgment, which,

respectively, employ the phrases "permanent public pedestrian access" and

"permanent public access."  The County asserts that we should consider the

resolution and the consent judgment both (1) as parol evidence to interpret the

easement's terms, which it says are "incomplete or facially ambiguous," *RX Sols.,*

*Inc. v. Express Pharmacy Servs., Inc.*, 746 So. 2d 475, 476 (Fla. 2d DCA 1999),

and (2) because, it says, the easement incorporates those separate documents in the

following provision:

> The County, by acceptance of this Easement, hereby agrees that this
> Easement fully meets the requirements of Resolution 99-79, issued by
> the Walton County Board of Commissioners on December 14, 1999,

13

regarding the 75 foot . . . beach access easement[.]  The County, in cooperation with St. Joe, shall fully comply with all existing or future governmental orders or authorizations related to the Easement Parcels[.]

Even if the easement incorporated the resolution and the consent judgment or an ambiguity in the easement permitted their use as parol evidence, neither the resolution nor the consent judgment forestalls or limits the abandonment clause's operation.  The passing references to "permanent . . . access" in the resolution and the consent judgment carry the same meaning as "permanent easement."  And as already explained, in the context of easements, "perpetual" and "permanent" specify easements of only potentially unlimited duration; they often contain "a condition under which the easement will end."  *See Permanent Easement*, Black's, *supra*.  Again, the abandonment clause sets forth such a condition in this easement. Therefore, even if we consider the resolution and the consent judgment, neither narrows the abandonment clause's scope.

## III

In summary, we hold (1) that the County's ordinance triggered the terms of the easement's abandonment clause and (2) that neither Florida common law, separate provisions in the easement itself, nor the resolution or consent judgment forestalls or limits the abandonment clause's operation.

**REVERSED AND REMANDED**.