DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JANOURA PARTNERS, LLC,** a Florida Limited Liability Company,
Appellant,

v.

**PALM BEACH IMPORTS, INC.,** a Florida corporation,
Appellee.

No. 4D17-2582

[December 19, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Edward A. Garrison, Judge; L.T. Case No. 502015CA010199XXXXMB.

Wayne Kaplan of Wayne Kaplan, P.A., Boca Raton and Philip M. Burlington of Burlington & Rockenbach, P.A., West Palm Beach, for appellant.

Brian B. Joslyn and Ronald E. Crescenzo of Ciklin Lubitz, West Palm Beach, for appellee.

MAY, J.

To grant an injunction or not was the question to be decided by the trial court. The trial court granted the injunction enforcing an easement between two commercial properties, a shopping center and an auto dealership. The shopping center now appeals. It argues the trial court erred in granting a permanent injunction in favor of the auto dealership. We disagree and affirm.

This dispute involves two property owners. On one site is an auto dealership. On the other is a strip mall shopping center. The prior owners of both properties entered into an ingress/egress easement in 1989 when the auto dealership was being constructed. The easement is contained in a recorded cross access agreement ("CAA"), which allows for vehicular and pedestrian traffic between the two parcels.

The CAA provided:

1. [The auto dealership] hereby grants to [the shopping center], its successors, assigns, licensees, and invitees a non-exclusive vehicular and pedestrian ingress and egress easement over, across, and upon those portions of the auto dealership property described in Exhibit "B" attached hereto, from time to time reasonably designated for vehicular pedestrian use by [the auto dealership], their successors and assigns.

2. [The shopping center] hereby grants to [auto dealership], his successors, assigns, licensees, and invitees a non-exclusive vehicular and pedestrian easement over, across, and upon those portions of the [shopping center], described in Exhibit "A" attached hereto, from time to time reasonably designated for vehicular and pedestrian use by [the shopping center].

Attached to the 1989 CAA were detailed property descriptions of both properties. The CAA also contained several provisions that obligated the auto dealership to conduct maintenance and keep up landscaping at its expense. There were no similar conditions for the shopping center.

This was the first auto dealership approved by the Town of Jupiter, and it was subject to certain conditions. One condition prohibited the loading and unloading of automobile transports on Indiantown Road. That activity had to take place on the auto dealership or an adjacent property.

In 1993, the Town of Jupiter entered into a developer's agreement with the then owner of the auto dealership. This agreement provided that the CAA would be assignable, but also stated that "[l]oading and unloading of vehicle transport trucks, all goods, materials, etc. shall occur entirely within the confines of the vehicle dealership."

The current owner acquired the auto dealership property in 2011.[1] At that time, the auto dealership typically had two auto transports a week, each of which lasted approximately 30 minutes. A year later, the auto dealership entered into an agreement with a successor owner of the shopping center to amend the CAA for the purpose of installing a gate to secure the dealership after-hours. Attached to that "Amendment to Cross Access Agreement" were the same descriptions of the properties from the

_____

[1] The auto dealership and shopping center are used to describe the two parties even though the properties went through multiple ownerships over the course of the history of the CAA. The parties are the current owners of the properties.

CAA and a site plan of the shopping center.

When the auto dealership later sought to make modifications to its property, the Town of Jupiter required it to obtain a letter from the shopping center owner stating that the auto dealership was permitted to load and unload automobile transports on the shopping center property. The shopping center agreed to write the letter confirming this arrangement in exchange for $500 a month to defray costs associated with the wear-and-tear on its property. The agreement provided that the arrangement would continue on a month-to-month basis and could be modified at any time or terminated by either party with 30 days' written notice. This May 2014 letter agreement was not recorded, but the shopping center provided it to the Town of Jupiter.

In December of 2014, yet another owner acquired the shopping center property. The loading and unloading of vehicles on the shopping center property continued uncontested until April of 2015, when the shopping center's new owner terminated the May 2014 agreement by giving the auto dealership 30 days' written notice. The shopping center notified the Town of Jupiter of the change, stating it "was necessary due to ongoing access issues and property damage we have experienced since our purchase of the center." It further explained that it believed "this agreement was required by the Town of Jupiter in order to allow the dealership to operate" so it "felt it was our obligation to let you know that the agreement was being terminated."

The auto dealership's attorneys wrote the Town of Jupiter, stating that the shopping center was attempting to terminate the rights granted by the CAA and argued that the agreement could not be unilaterally cancelled. Following the letter to the auto dealership, the shopping center asked for $2,500 per month to continue the arrangement, pursuant to a new agreement. When negotiations failed, the auto dealership filed a complaint against the shopping center seeking declaratory and injunctive relief.

The auto dealership moved for a temporary injunction to prohibit the shopping center from interfering with its loading and unloading pursuant to the CAA. The shopping center moved to dismiss and filed a counterclaim and answer. It argued the auto dealership was not entitled to relief because the easement unambiguously does not allow for loading and unloading, and the shopping center had permissibly terminated the arrangement according to the May 2014 agreement. The shopping center's counterclaim sought injunctive relief to prohibit the auto dealership from loading and unloading vehicles on its property and included a count for trespass.

3

The trial court that entered the preliminary injunction concluded the easements were ambiguous due to the attachment of the legal description of the entire shopping center property, and looked to the circumstances surrounding the creation of the easement. The trial court granted the auto dealership's motion for temporary injunction and denied the shopping center's motion for temporary injunction. We affirmed. *Janoura Partners, LLC v. Palm Beach Imports, Inc.*, 212 So. 3d 372 (Fla. 4th DCA 2016) (table).

The parties then tried the case. The successor judge found the attached site plan created an ambiguity. It agreed with the analysis used by the predecessor judge. In granting the auto dealership's permanent injunction, the court stated:

> When construing the scope of an easement, the Court must attempt to fulfill the parties' intentions, and thus the Court may consider the circumstances surrounding the creation of the easement. Notwithstanding the testimony of several witnesses that the Town of Jupiter has for years had a policy regarding Cross Access Agreements between adjacent commercial properties along Indiantown Road, the evidence also shows that . . . [the auto] dealership with no space or room to load and unload auto transports . . . requested approval of a cross access driveway and entered into the CAA with the owner of [the shopping center].
>
> The Court finds compelling the [auto dealership's] argument that (a) there was no need for a pedestrian cross access point because there was a sidewalk running in front of both properties; and (b) no real need for vehicular cross access because both properties had curb cuts and driveways more than capable of providing access between the properties; and (c) that the Court should examine all the circumstances surrounding negotiation and execution of the CAA in 1989.
>
> . . . .
>
> When the Court looks to why [the auto dealership] requested the CAA and what [it] intended to acquire, and then factors in the uncontradicted testimony that, from the Dealership's earliest days, it was loading and unloading auto transports on [the shopping center property], competent, substantial evidence exists in this record to support [the auto dealership's] position that the CAA was intended to permit such activities.

4

The shopping center argues the permanent injunction should be reversed because the language in the CAA was unambiguous. It claims "ingress and egress" are well-defined terms that preclude the auto dealership from parking to load and unload cars, and the auto dealership doing so exceeds the scope of the granted easement. The shopping center argues the court erred in admitting extrinsic evidence to determine the scope of ingress/egress and the purpose of the CAA. It contends the latent ambiguity argument claimed by the auto dealership was not properly preserved. And, it suggests the permanent injunction creates a grave injustice by allowing the auto dealership to use the shopping center's property without compensation.

The auto dealership responds that there is a latent ambiguity, and the court correctly admitted evidence to determine the scope and purpose of the easement. It asks us to affirm the permanent injunction.

"To the extent it rests on factual matters, an order imposing a permanent injunction lies within the sound discretion of the trial court and will be affirmed absent a showing of abuse of discretion." *Operation Rescue v. Women's Health Ctr., Inc.*, 626 So. 2d 664, 670 (Fla. 1993). However, to the extent that the injunction rests on legal grounds, the order is subject to de novo review. *Id.*

We have de novo review of whether a contract is ambiguous. *Hastie v. Ekholm*, 199 So. 3d 461, 464 (Fla. 4th DCA 2016). If ambiguous, "we review the trial court's interpretation of the [contract] for competent substantial evidence." *Id.*

The shopping center and auto dealership agree the dispute centers upon the interpretation of the CAA's easement. The issue is whether the court was permitted to look to the intent behind the contract formation; if the terms are unambiguous, the court must give effect to the terms as stated, but if the terms are ambiguous, the court may consider extrinsic evidence to determine the intent of the parties. *See Sandlake Residences, LLC v. Ogilvie*, 951 So. 2d 117, 120 (Fla. 5th DCA 2007).

Within the realm of ambiguity, there are rules. "Patent ambiguities are on the face of the document, while latent ambiguities do not become clear until extrinsic evidence is introduced and requires parties to interpret the language in two or more possible ways." *Prime Homes, Inc. v. Pine Lake, LLC*, 84 So. 3d 1147, 1151–52 (Fla. 4th DCA 2012). Put differently:

It is [latent], where the language employed is clear and

5

intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings. But a patent ambiguity is that which appears on the face of the instrument, and arises from the defective, obscure, or insensible language used.

*Ace Elec. Supply Co. v. Terra Nova Elec., Inc.*, 288 So. 2d 544, 547 (Fla. 1st DCA 1973).

Here, ingress/egress are clear and intelligible terms, but the addition of the legal description of the properties suggests a latent ambiguity making it necessary to consider why the agreement was made in the first place. This is precisely what the trial court found. There is competent substantial evidence to support the trial court's finding.

As the auto dealership argues, the attachment of the legal description of the entirety of the shopping center property to the CAA created a latent ambiguity because the metes and bounds description detailed the entire property, and was not limited to the particular area of ingress and egress between the two properties suggested in the CAA. *See Branscombe v. Jupiter Harbour, LLC*, 76 So. 3d 942, 947 (Fla. 4th DCA 2011) (holding "the agreement with its attached parking lot plan created an ambiguity allowing the trial court to consider parol evidence.").

Once the latent ambiguity was found to exist, the trial court properly considered extrinsic evidence to give meaning to the CAA and the parties' rights under it. Considering that evidence, the trial court concluded the CAA was a valid easement. It further concluded that the intention of the CAA was the loading and unloading of auto transports on the shopping center property. And, there was no evidence that the use of the property "interfered in any way with anyone or any aspect of" the shopping center, as the trial court correctly noted.[2]

We therefore affirm.

*Affirmed.*

LEVINE and KLINGENSMITH, JJ., concur.

---

[2] We express no opinion on whether the shopping center is entitled to compensation for the imposition of the permanent injunction and a permanent easement on the shopping center's property.

\*     \*     \*

*Not final until disposition of timely filed motion for rehearing.*